Filed 1/28/21  P. v. Aviles CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE AVILES,<br><br>    Defendant and Appellant. | D076393<br><br><br><br>(Super. Ct. No. SCS304235) |

APPEAL from a judgment of the Superior Court of San Diego County, Roderick Ward Shelton, Judge.  Affirmed.

Bruce L. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Charles C. Ragland and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jose Aviles of assaulting C.K. with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count 1) and assaulting J.M. by means likely

---

[1]    Undesignated statutory references are to the Penal Code.

to produce great bodily injury (§ 245, subd. (a)(4); count 2). As to count 2, it found true an allegation that Aviles personally inflicted great bodily injury on J.M., who was not an accomplice (§ 1192.7, subd. (c)(8)). The court suspended imposition of sentence and placed Aviles on formal probation for three years on certain terms and conditions, including that he serve 270 days in the sheriff's custody.

Aviles contends the court prejudicially erred by instructing the jury with CALCRIM No. 3471 ("Right to Self-Defense: Mutual Combat or Initial Aggressor") as modified, and CALCRIM No. 3472 ("Right to Self-Defense: May Not Be Contrived") because the instructions prevented the jury from properly considering his self-defense claims. He alternatively contends his trial counsel provided ineffective assistance by failing to request modification of those instructions. Aviles also contends that his probation conditions regarding the search of computers and recordable media, the imposition of a curfew, and requiring him to report his contacts with law enforcement are unconstitutionally overbroad. He contends the latter condition is additionally vague

The People concede the court's modification of CALCRIM No. 3471 was erroneous, but argue that the error was harmless beyond a reasonable doubt. We agree and affirm.

FACTUAL BACKGROUND

*Prosecution Case*

On September 16, 2018, M.M. went to a laundromat in Chula Vista, California. Her father, J.M., who was 62 years old and small in stature, parked his car nearby. While M.M. was parking her car, Aviles drove past her in his pickup truck and twice honked the loud airhorn he had installed on his vehicle. The horn scared M.M., and her son started crying.

2

M.M. was angry and walked over to Aviles's truck to seek an apology. But Aviles refused to lower his window and instead "flipped off" M.M. and stuck out his tongue. As M.M. was walking away, Aviles got out of his vehicle and walked in the same direction as M.M., yelling insults and profanities at her. Aviles called M.M. a "welfare bitch" and other insulting names, said he did not "give a fuck" about M.M. or her "fucking kid," and that he had his own washing machine at home and did not have to wash with her kind of people.

J.M. yelled at Aviles, "You need to respect the ladies" and, "You think you are so bad because you have a big truck and a dumb horn?" Aviles yelled profanities at J.M. J.M. testified Aviles got "real mad" and walked quickly toward J.M.'s car. From about five feet away, Aviles ran towards J.M. J.M. reached into his car and removed a steering wheel lock ("the club") that was approximately two-feet long and weighed three and a half pounds. J.M. raised the club to his face to protect himself. J.M. did not try to hit Aviles with the club. J.M. remembered that Aviles punched him in the face once; however, other witnesses testified Aviles punched J.M. more than once. One witness said Aviles managed "[d]efinitely three good hits" on J.M. Aviles also took the club from J.M.

C.K., a bystander who weighed approximately 330 pounds, broke up the fight by pushing Aviles, who weighed 200 pounds. Aviles hit C.K. in the head with the club. C.K. repeatedly told Aviles to drop the club, but he refused. M.M. finally removed the club from Aviles while C.K. held him. Aviles screamed at C.K. to let him go. C.K. eventually let him go. Aviles drove away.

J.M. was taken to the hospital, as his dentures were broken and his nose and mouth were bleeding. Aviles had fractured J.M.'s left cheekbone.

*Defense Case*

Aviles testified he realized during the verbal altercation with J.M. that "these people are heated, and I didn't want them hurting my truck"; therefore, he decided to return to his truck. Aviles noticed J.M. reaching into his car for what Aviles thought was a gun. Aviles became scared but elected not to run away because he thought J.M. would shoot him in the back. Instead, he ran towards J.M., grabbed the club while J.M. held it in mid-swing, and punched J.M. once. Immediately afterwards, Aviles felt someone, later identified as C.K., grab his throat from behind, pick him up, and drag him. Aviles felt terrified and hit C.K. with the club. Mere seconds passed from the moment Aviles rushed J.M. until C.K. subdued Aviles.

*Rebuttal*

The People introduced a transcript of a police officer's telephone call with Aviles while Aviles was driving away from the scene. In it, Aviles never mentioned that he thought J.M. had a gun.

*Counsels' Arguments*

The prosecutor argued to the jury: "[The witnesses] are all consistent about an attack, that [Aviles] was an aggressor. He wasn't someone who was reacting in self-defense to [J.M.] coming after him from behind his car door. [J.M.] was pinned back up against his door. Self-defense may not be contrived. You don't get to start a fight. You don't get to put someone in danger by attacking them and then claim self-defense because they are protecting themselves or they are fighting back. And when you think about the self-defense instruction, when you think about the elements that you are asked to look at, think about how those apply to [J.M.] Think of them how they apply to the man [J.M.] standing behind his door sticking up for his daughter while this other man [Aviles], angry, yelling, demeaning comes

4

running around the car at him ready to fight as [J.M.] said 'I thought [Aviles] was going to attack me' and he did. Self-defense applies to [J.M.] [J.M.] is pulling up the club to protect himself from this person who is coming at him, from this person who this didn't even give a momentary pause. [Aviles] just kept punching and took it out of his hands."

As to Aviles's attack on C.K., the prosecutor argued in closing, "[Aviles] swung the club at [C.K.] for a reason. And when [Aviles] acted, he realized that he had the present ability to apply force with a deadly weapon. He knew he had it in his hand. He swung it. That is why he swung it. He knew he had the present ability. He knew he had that weapon in his hand. He knew what it was. He knew it was a weapon. He knew it was a heavy metal-like substantial object. He had it in his hand."

In rebuttal, the Prosecutor argued, "[Aviles] was the aggressor. He was the attacker. And once he attacked [J.M.], that is it. And when [C.K.] stepped in, it didn't change the scenario so much that [Aviles] now gets to claim self-defense against [C.K.]. Just because someone goes to protect a smaller person doesn't mean you get to hit that person when you started the fight, when you attacked someone."

Defense counsel reiterated to the jury the portion of CALCRIM No. 3471 that says, "However, if the defendant used only non-deadly force and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to stop fighting, communicate the desire to stop to the opponent or give the opponent the chance to stop fighting." Defense counsel also argued: "The person that brought this [club] to the fight was [J.M.] He told you he pulled it out and we

5

will describe in a bit how he did it and what he did with this. He brought this, not Mr. Aviles."

Defense counsel argued that Aviles attacked C.K. in self-defense: "And all of a sudden a third man [C.K.], or a third person because [Aviles] didn't know who it was, with great force grabs [Aviles] and starts pulling him back. Well, what would the reaction be there? You don't even see it. And [Aviles] swings back and hits [C.K.] in the head. [Aviles] was scared. He was trying to defend himself, something he told you."

## DISCUSSION

### I. *Instructional Errors*

The pattern version of CALCRIM No. 3471's opening sentence states, "A person who (engages in mutual combat/ [or who] starts a fight) has a right to self-defense only if: . . . ." Here, the court's modified instruction to the jury stated the correct title: CALCRIM No. 3471 ["Right to Self-Defense: Mutual Combat or Initial Aggressor"]; however, the court omitted the words, "or who starts a fight" from the body of the instruction.

Aviles argues, "CALCRIM No. 3471 as modified by the court did not instruct on [his] right to self-defense in the face of sudden use of deadly force by [J.M.] if the jury found that [Aviles] was the initial aggressor using only non-deadly force." (Emphasis omitted.) He concedes that "there was substantial evidence from the prosecution witnesses that [he] was the initial aggressor." He also argues the court should not have given the portion of CALCRIM No. 3471 on mutual combat.

The People concede the court erred by not instructing the jury that Aviles was the initial aggressor, but claim there was evidence of mutual combat and the error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24. We need not address the

6

mutual combat issue because even assuming without deciding that there was no mutual combat, that would not alter our analysis.

*The Court's Instructions*

Without objection, the court instructed the jury with CALCRIM Nos. 3470, 3471 and 3472. CALCRIM No. 3470 provides that "[t]he defendant acted in lawful self-defense if: one, the defendant reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; two, the defendant reasonably believed that the immediate use of force was necessary to defend against that danger; and, three, the defendant used no more force than was reasonably necessary to defend against that danger."

The court read the modified CALCRIM No. 3471 instruction as follows: "A person who engages in mutual combat has a right to self-defense only if: one, he actually and in good faith tried to stop fighting; two, he indicated by word or by conduct to his opponent in a way that a reasonable person would understand that he wanted to stop fighting and that he had stopped fighting; and, three, he gave his opponent a chance to stop fighting. If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight. However, if the defendant used only non-deadly force and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting, [or] communicate the desire to the opponent or give the opponent a chance to stop fighting. A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose."

7

The court instructed the jury with CALCRIM No. 3472, which provides: "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."

*Applicable Law*

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

We review the correctness of a jury instruction de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218; *People v. Bates* (2019) 35 Cal.App.5th 1, 9.) We review the instructions as a whole, and not just parts of a particular instruction. (*People v. Burgener* (1986) 41 Cal.3d 505, 538, disapproved on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 756; *People v. Castillo* (1997) 16 Cal.4th 1009, 1016 [reviewing court's duty is to look at the instructions as a whole, not in isolation].) A trial court has a duty to instruct the jury sua sponte on general principles which are closely and openly connected with the facts of the case. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.) In that regard, a trial court has a sua sponte duty to give instructions on self-defense if there is substantial evidence to support that defense and the defense is not inconsistent with the defendant's theory of the case. (*Ibid.*; *People v. Elize* (1999) 71 Cal.App.4th 605, 615.) Substantial evidence for this purpose means evidence that a reasonable jury could find persuasive. (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8; *People v. Ross* (2007) 155 Cal.App.4th 1033, 1049-1050.)

Self-defense requires that the defendant actually and reasonably believed in the need to defend, which must be objectively reasonable. The jury must consider all relevant circumstances to determine whether a reasonable person in the defendant's position would have believed in the need to defend. (*People v. Jefferson* (2004) 119 Cal.App.4th 508, 518.) In exercising self-defense, however, a person may only use that force which is necessary in view of the nature of the attack. (*People v. Clark* (1982) 130 Cal.App.3d 371, 377.) If the defendant started the fight using non-deadly force and the opponent suddenly escalates to deadly force, the defendant may defend himself or herself using deadly force. (See *People v. Quach* (2004) 116 Cal.App.4th 294, 301-302.)

We cannot set aside a judgment on the basis of instructional error unless, after an examination of the entire record, we conclude that the error has resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) "We also consider the instructions as a whole, the jury's findings, and the closing arguments of counsel." (*People v. Larsen* (2012) 205 Cal.App.4th 810, 831.)

*Analysis*

Aviles's claim is that "assuming [he] attacked [J.M.] without justification, [he] had the right to self-defense if [J.M.] used sudden deadly force by quickly arming himself with the club and swinging at [Aviles]." But he misreads the modified version of CALCRIM No. 3471 given by the trial court here when he argues that it somehow precluded his self-defense argument. The basic self-defense instructions are found in CALCRIM No. 3470, also given by the court. CALCRIM No. 3471 is a *limitation* on the otherwise applicable self-defense instruction. In its unmodified form, it tells the jury that a defendant cannot rely on general self-defense principles in two situations: (1) when the defendant initiates the fight, and (2) when the fight

9

is the result of mutual combat. In those two situations, special more limited rules (as explained in CALCRIM No. 3471) apply.

Here, the court should not have removed the "starts a fight" language from the version of CALCRIM No. 3471 that it read to the jury. There was abundant evidence that Aviles started the fight. But Aviles erroneously assumes that this omission deprived him of the opportunity to argue self-defense if the jury found he initiated physical violence. To the contrary, however, if anything the omission worked to his advantage. The jury was never instructed that Aviles's right to claim self-defense was limited if he started the fight. Without the omitted language in the CALCRIM No. 3471 instruction, the only restriction on applying general self-defense principles was if the jury found that Aviles and J.M. engaged in mutual combat; there was no express limitation if Aviles was the aggressor.

Of course, a reasonable jury could have recognized the incongruity of restricting self-defense in cases of "mutual" combat but not when the defendant initiated the combat. Had it done so, it may well have (correctly) applied CALCRIM No. 3471 to both situations. Either way, we see no way the improperly modified instruction prejudiced Aviles.[2]

In a variation on the same theme, Aviles relies on *People v. Ramirez* (2015) 233 Cal.App.4th 940 to argue the trial court erroneously instructed the jury with CALCRIM No. 3472 that one who provokes a fight with the intent

---

[2] We note that Aviles's counsel was not deterred from arguing this theory to the jury: "And all the testimony is consistent. [Aviles] is walking fast, makes a wide turn, comes back and he rushes [J.M.] when he is at the end of the sidewalk. Those last four to five, six feet. The length of the car to where [J.M.] is." When Aviles "rushed" toward J.M., he initiated the aggression. Based on the evidence and counsel's argument, the jury was able to properly consider Aviles's self-defense claim even assuming it found he started the fight.

to create an excuse to use force does not have the right to self-defense. He asserts that this instruction, in concert with the prosecutor's argument that Aviles had no right to self-defense because Aviles started the attack on J.M., prevented the jury from considering whether his use of force on J.M. and C.K. was justified.

In *Ramirez*, the court held in the context of an imperfect self-defense claim that on the facts presented, CALCRIM No. 3472 and the prosecution's arguments erroneously required the jury to conclude that in contriving to use force, even to provoke only a fist fight, defendants entirely forfeited any right to self-defense. (*Ramirez, supra,* 233 Cal.App.4th at p. 953.) Aviles's reliance on *Ramirez* is unavailing as that court also stated: "True, CALCRIM No. 3472 states a correct rule of law in appropriate circumstances. Thus, a victim may respond to an attacker's initial physical assault with a physical counterassault, and an attacker who provoked the fight may not in asserting he was injured in the fray claim self-defense against the victim's lawful resistance." (*Ramirez, supra,* at p. 947; *People v. Eulian* (2016) 247 Cal. App. 4th 1324, 1334 ["CALCRIM No. 3472 is generally a correct statement of law, which might require modification in the rare case in which a defendant intended to provoke only a non-deadly confrontation and the victim responds with deadly force"].)

Although Aviles's own testimony that he yelled profanities and insults at M.M. and J.M., combined with the other witnesses' testimony, might in other circumstances support an inference that he provoked the fight with the intent to create an excuse to use force, the undisputed evidence here demonstrated that he did much more. As his counsel conceded in closing argument, Aviles "rushed" at J.M. after J.M. reached inside his car for the club. This is either initiating a fight or acting in self-defense. It is not

11

"provok[ing] a fight or quarrel with the intent to create an excuse to use force."  (CALCRIM No. 3472.)  Even if CALCRIM No. 3472 requires modification in some instances, this was not one of them, and we can see no way Aviles was prejudiced by the giving of the instruction.  Accordingly, we conclude the error was harmless beyond a reasonable doubt under *Chapman*.

Our conclusion that Aviles did not suffer prejudice from any instructional error disposes of Aviles's ineffective assistance of counsel claim.

## II.  *Probation Conditions*

Aviles challenges three of his probation conditions.  During the pendency of this appeal, this court addressed similar challenges in a case dealing with mandatory supervision.  We pointed out that such challenges "ordinarily must be raised in the trial court, and if they are not, appellate review of those conditions is forfeited.  [Citation.]  The one exception to this rule involves facial constitutional challenges.  [Citation.]  The forfeiture rule does not apply in such a case because a facial constitutional challenge ' "present[s] [a] 'pure question[ ] of law that can be resolved without reference to the particular sentencing record developed in the trial court' " ' [citation] and 'does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts—a task that is well suited to the role of an appellate court.' "  (*People v. Brand* (2021) ___ Cal.App.5th ___ [2021 WL 79614].)

As defense counsel did not object to any of the probation conditions, the challenges are forfeited unless they are facial constitutional challenges that do not require scrutiny of the individual facts and circumstances of Aviles's case under the California Supreme Court's case law set forth in *In re Sheena K.* (2007) 40 Cal.4th 875, 887-889.

12

Condition 6.n states that Aviles shall "[s]ubmit person, vehicle, residence, property, personal effects, computers, and recordable media, [and] to search at any time with or without a warrant, and with or without reasonable cause, when required by [probation officer] or law enforcement officer." With respect to this condition, Aviles challenges only the provisions relating to his electronic devices, namely, "computers, and recordable media."

Aviles's constitutional challenge to the electronics search condition is based on an overbreadth theory: "This is a simple no-tech assault case. . . . Appellant's crime has nothing to do with any use of computers; and, there is nothing in the record to suggest that there is a compelling state interest in being able to search appellant's computers or recordable media in order to supervise him for assault." This argument establishes Aviles's challenge is not based on facial constitutional grounds, but instead depends on the facts of his case. The challenge is accordingly forfeited.

Condition 6.e states that Aviles shall "[c]omply with a curfew if so directed by the [probation officer]." Aviles argues that this condition is constitutionally overbroad. However, Aviles's overbreadth argument focuses on the specific facts of his case: "The incident occurred in broad daylight. And, there is nothing in the record indicating appellant is more prone to commit crimes at night, or that a curfew is required to supervise him." Because Aviles bases his constitutional challenge on the specific facts of his case, it is not a facial challenge, and therefore it is forfeited because Aviles did not raise it in the trial court. (*In re Sheena K., supra,* 40 Cal.4th at pp. 887-889.)

Condition 6.k states that Aviles shall "[p]rovide true name, address, and date of birth if contacted by law enforcement. Report contact or arrest in writing to the [probation officer] within 7 days. Include the date of

contact/arrest, charges, if any, and the name of the law enforcement agency." Aviles argues that this condition is vague and overbroad because "[a]s written, the terms include any unqualified and undefined contact with law enforcement, imposing an undue burden on him. It might reasonably be seen as including insignificant and completely lawful conduct that should not be the source of a violation, including consensual encounters. Furthermore, the condition induces appellant to forego exercising his constitutional rights to free association and travel by avoiding innocent situations wherein he would come into 'contact' with or be 'contacted' by law enforcement, thus triggering his obligation under the condition." As the People concede, this challenge does not depend on the specific facts of Aviles's case, and accordingly Aviles did not forfeit this facial constitutional challenge. (*People v. Brand, supra,* ___ Cal.App.5th ___ [2021 WL 79614, \*3].)

In rejecting a similar challenge to this probation condition, this court in *Brand* concluded that "the report-contact condition, when read in its entirety, would indicate to a reasonable person that [defendant] is not required to report casual, random interactions with law enforcement officers. Instead, the type of law enforcement contacts that must be reported are those in which [defendant] is questioned by law enforcement officers and is required to give identifying information, such as when he has been a witness to a crime or is suspected of possible involvement in a crime. Accordingly, we reject [defendant's] contention that the report-contact condition is unconstitutionally vague and overbroad." (*People v. Brand, supra,* ___ Cal.App.5th ___ [2021 WL 79614, \*6].) We adopt *Brand*'s reasoning to reject Aviles's challenge in this case.

14

## DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

DATO, J.

15