Filed 5/7/19

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>    v.<br><br>DAVID RICHARD BATES,<br><br>       Defendant and Appellant. | C086471<br><br>(Super. Ct. No. CR034048) |

APPEAL from a judgment of the Superior Court of Lassen County, Candace J. Beason, Judge. (Retired judge of the Los Angeles Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed as modified.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and F. Matt Chen, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II and III.

1

Defendant David Richard Bates shot M.H. in the head, killing him. A jury found him guilty of voluntary manslaughter and the court sentenced him to 18 years in state prison.

On appeal, defendant contends the trial court erred in refusing his request to instruct the jury regarding the effect of the victim's past harmful or threatening conduct on the reasonableness of a defendant's belief in the need for self-defense. He also challenges imposition of a five-year prior serious felony enhancement under Penal Code section 667, subdivision (a)(1) [1] on several grounds, including that the sentence was unauthorized because the information did not allege such an enhancement nor did he admit a prior serious felony conviction for that purpose, that it violated due process because he was given inadequate notice of the enhancement, that his counsel was constitutionally ineffective for failing to object to the enhancement, and that even if the enhancement was proper, the matter must be remanded to allow the trial court to exercise newly granted discretion to strike the prior serious felony enhancement under Senate Bill No. 1393 (2017-2018 Reg. Sess.).

We conclude the trial court did not err in declining to give defendant's requested instruction, but that the court improperly imposed a five-year term for a prior serious felony enhancement under section 667, subdivision (a)(1). We shall strike the unauthorized enhancement and affirm the judgment as modified. In addition, we shall order that a clerical error on the abstract of judgment be corrected.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant originally was charged with the first degree premeditated murder of M.H. (§§ 187, subd. (a), 189–count I), and assault with a firearm (§ 245, subd. (a)(2)–

---

[1] Further undesignated statutory references are to the Penal Code.

2

count II).[2]  The information alleged multiple firearm enhancements (§§ 12022.53, subds. (b)-(d), 12022.5), and that defendant had suffered a prior serious or violent felony conviction or juvenile adjudication within the meaning of section 667, subdivisions (b) through (i), and had served four prior prison terms under section 667.5, subdivision (b). The court later granted defendant's motion to dismiss the willful, deliberate, and premeditated allegation, reducing count I to second degree murder.  The following evidence was adduced at trial.

On May 25, 2016, Randy W. and his nephew, M.H., were living in two separate trailers about 100 feet apart on property owned by Dwight B.  Dwight had previously accused M.H. of stealing items from him, and demanded that Randy and M.H. move off the property.

That day, Dwight, defendant, and several other men visited Randy at his trailer and told him "it was moving day."  As they spoke, M.H. pulled up in his vehicle near his own trailer.  According to Randy, Dwight and the other men approached M.H. as he got out of his vehicle.  After some discussion, defendant pulled a gun from his pocket and shot M.H. in the head.  M.H. fell to the ground, and defendant tossed the gun to another man and fled.

During cross-examination, Randy conceded that at some point before the day of the shooting, he had seen M.H. and Dwight arguing and that M.H. had threatened Dwight.  He also saw M.H. pull a shotgun from his trailer when Dwight had previously asked him to leave the property.

Norman F. testified that Dwight asked him and his roommate to accompany him to a trailer to retrieve his stolen property.  While Dwight spoke with a man at the trailer, Norman and his roommate walked towards a nearby barn.  Norman turned around and

---

[2]  Count II was dismissed before trial.

saw defendant, Dwight, and M.H. talking; they were not arguing. Defendant suddenly grabbed M.H. in a headlock, and Norman heard a pop and saw M.H. fall to the ground. Defendant threw something on the ground and ran into the woods.

After the shooting, Norman and his roommate immediately left the area; only Randy and Dwight remained. Dwight called 911, and his recorded call was played for the jury. He reported that the man who was shot had pulled a gun out, gotten into a fight, and the gun went off; he said he did not know how the actual shooting happened.

Deputy Sean Moore responded to the scene. He found M.H. lying on his back without any signs of life; Dwight and Randy were nearby. Deputy Moore unsuccessfully tried to revive M.H. When placing M.H. in a body bag to be transported for an autopsy, Deputy Moore forgot to "bag" M.H.'s hands. He also did not collect any potential gunshot residue evidence from M.H., Dwight, or Randy.

The autopsy revealed a single gunshot wound behind M.H.'s left ear with a bullet lodged in his brain. Soot marks around the entrance wound indicated the gun was fired at very close range. Although a visual inspection of M.H.'s hands did not reveal any visible signs of gunshot residue, no gunshot residue swabs of his hands were taken or tested during the autopsy. His clothes also were not tested for gunshot residue.

A toxicology report showed M.H. had high levels of methamphetamine and other drugs in his system when he was killed. According to the report, methamphetamine is a stimulant capable of causing hallucinations, aggressive behavior, and irrational reactions.

Defendant did not testify, but he called several witnesses in his defense. D.C., Dwight's niece, testified that in April 2016, her cousin (Dwight's daughter) told her that she feared for her father's safety because there was a man on his property with a gun. D.C. and several others went to her uncle's property near the location of M.H.'s trailer. When they arrived, M.H. emerged from his trailer with a shotgun. D.C. called 911, and she heard M.H. say, "If the cops come, I'm going to burn this fucking place down."

4

When no officers responded after 20 minutes, D.C. called 911 again. She eventually left the property without speaking to law enforcement.

In a subsequent statement to police, D.C. said she had gone to the property that day to help clean it up. After Dwight told her he wanted M.H. off his property, she offered to assist in trying to get him to leave. While she described seeing M.H. with a shotgun when they arrived at his trailer, unlike during the trial, she did not report any alleged statement by M.H. that he would burn the place down if officers showed up on the property.

Deputy Laura Johnson testified that the gun used to shoot M.H. was never recovered. She also confirmed that responding officers did not search Dwight's house or M.H.'s or Randy's trailers, nor did they collect gunshot residue samples from M.H.'s body or anyone else at the scene, although canines were used to search the property the following day.

Ken Moses, an expert in crime scene investigation and forensic evidence, opined that law enforcement did not conduct a proper forensic investigation of the scene the day M.H. was shot. Although a small area around M.H.'s body was protected, the wider crime scene area was not. Responding officers also mishandled or moved M.H. and failed to bag his hands, which potentially destroyed fragile blood spatter and gunshot residue evidence.

During closing argument, defense counsel argued that M.H. pulled a gun on Dwight and defendant when they approached him, that defendant and M.H. wrestled for the gun, and that somehow the gun went off during the struggle. She urged the jury to find that the killing was a justifiable homicide under CALCRIM No. 505, emphasizing evidence showing that M.H. had high levels of methamphetamine in his system, that he had threatened D.C. with a shotgun a month before the shooting, and that Randy had seen M.H. threaten Dwight and draw a gun on him sometime before the incident.

The jury found defendant not guilty of second degree murder, but guilty of voluntary manslaughter as a lesser included offense. In a subsequent proceeding, defendant admitted the allegation "as alleged" in the information that he suffered a section 245 conviction in August 2005. He also admitted "as alleged" that he suffered a section 12020, subdivision (a)(1) conviction in November 2002. Before taking defendant's admissions, the court explained that defendant was admitting a strike under section 667, subdivisions (b) through (i), which would double his sentence, and that he was admitting a prior prison term under section 667.5, subdivision (b), which would add additional time to his term. Defendant stated that he understood the consequences of admitting the prior convictions as alleged.

The court denied defendant's subsequent *Romero*[3] motion to strike the prior strike conviction, and sentenced him to an aggregate term of 18 years in state prison: the midterm of six years for the voluntary manslaughter offense, doubled to 12 years for the strike prior, plus five years for a prior serious felony enhancement (§ 667, subd. (a)(1)),[4] and one year for a prior prison term enhancement (§ 667.5, subd. (b)).

DISCUSSION

I

*Instructional Error*

Defendant contends that the trial court erred in refusing to give a bracketed portion of CALCRIM No. 505, the pattern jury instruction on self-defense in a homicide case, that would have instructed the jury that it could consider M.H.'s prior violent or threatening conduct in assessing the reasonableness of defendant's actions, even though

---

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

[4] Although the information did not reference section 667, subdivision (a)(1), defendant did not object when the court imposed the five-year prior serious felony enhancement under that section.

6

no evidence showed defendant was aware of M.H.'s prior conduct. The trial court did not err in declining to give defendant's requested instruction.

*Background*

Defense counsel requested a self-defense instruction that included language based on the following bracketed provision of CALCRIM No. 505: "If you find that _____ <*insert name of decedent/victim*> threatened or harmed the defendant [or others] in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable]." (CALCRIM No. 505.) Defendant's requested instruction specifically stated in part: "If you find that [M.H.] threatened or harmed the defendant or others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable."

The court initially agreed to give the instruction as requested, but the prosecutor objected to the language regarding M.H.'s prior threats or harmful conduct. He argued that defendant had to know that M.H. had threatened or harmed him or others in the past before the jury could consider M.H.'s prior violent conduct in deciding whether defendant's actions in self-defense were reasonable.

Defense counsel pointed out that a second bracketed provision in the pattern jury instruction stated: "If you find that the defendant knew that _____ <*insert name of decedent/victim*> had threatened or harmed others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable]." Thus, because the instruction included both optional provisions—one that required knowledge and one that apparently did not—she contended that the first bracketed provision was appropriate where, as here, a defendant does not know of a decedent's prior harmful or threatening conduct towards others.

The trial court disagreed, finding that defendant had to know of M.H.'s prior threatening conduct before it could instruct the jury with either of the above-described bracketed provisions. According to the court, "the testimony of the witness who

7

mentioned that [M.H.] had made threats, . . . that's character evidence of [M.H.] that he was somewhat of a flammable character," but without evidence showing defendant knew of the threats the court refused to instruct the jury as defense counsel requested. The court therefore struck the disputed sentence from the instruction.

The jury was instructed on self-defense with the following:

"The defendant is not guilty of murder or manslaughter if he was justified in killing someone in self-defense or defense of another. The defendant acted in lawful self-defense or defense of another if:

"1. The defendant reasonably believed that he or someone else was in imminent danger of being killed or suffering great bodily injury;

"2. The defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger;

"AND

"3. The defendant used no more force than was reasonably necessary to defend against that danger. Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was imminent danger of death or great bodily injury to himself or someone else. Defendant's belief must have been reasonable and he must have acted only because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. If the defendant used more force than was reasonable, the killing was not justified.

"When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed. [¶] . . . [¶]

8

"The People have the burden of proving beyond a reasonable doubt that the killing was not justified.  If the People have not met this burden, you must find the defendant not guilty of murder or manslaughter."  (CALCRIM No. 505, as given.)

*Analysis*

A trial court must instruct on the general principles of law applicable to a case.  (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)  A homicide is justifiable when committed in self-defense.  (§ 197.)  "A trial court is required to instruct sua sponte on any defense, including self-defense, only when there is substantial evidence supporting the defense, and the defendant is either relying on the defense or the defense is not inconsistent with the defendant's theory of the case.  [Citation.]"  (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49.)

Although the trial court here instructed on self-defense, defendant argues the instruction as given was incomplete.  In defendant's view, the omitted language—that "[i]f you find that [M.H.] threatened or harmed the defendant or others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable"—was necessary to instruct the jury on how to consider evidence of M.H.'s prior threatening conduct in determining whether he acted in perfect or imperfect self-defense.  We disagree.

Our task is to determine whether the trial court fully and fairly instructed the jury on the applicable law.  (*People v. Franco* (2009) 180 Cal.App.4th 713, 720.)  We review de novo whether a jury instruction correctly states the law.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction."  (*People v. Burgener* (1986) 41 Cal.3d 505, 538, disapproved on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 756; *People v. Castillo* (1997) 16 Cal.4th 1009, 1016 [our duty is to look at the instructions as a whole, not in

9

isolation].)  If reasonably possible, we interpret instructions to support the judgment rather than to defeat it.  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

Evidence that a victim had previously threatened or harmed others is relevant to a defendant's claim of self-defense *only if* the defendant knew of the victim's prior threatening conduct.  (*People v. Tafoya* (2007) 42 Cal.4th 147, 165-166 [evidence that a person associated with the murder victim was dangerous was relevant to the defendant's claim of self-defense only if the defendant knew of the person's reputation for dangerousness and was afraid of him; because no such evidence was presented, the person's presence at the murder scene was not part of the defendant's self-defense claim]; *People v. Pena* (1984) 151 Cal.App.3d 462, 475 ["an instruction on the effect of antecedent threats known by a defendant is required where evidence establishes . . . threats . . . made by the deceased against the defendant and the defendant's belief and reliance thereon as influencing or justifying his actions"].)  This is because " '[a] person claiming self-defense is required to "prove his own frame of mind." ' "  (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065 (*Minifie*).)

As a defendant's " 'perceptions are at issue,' " prior known threats by the victim " 'may color [the defendant's] perceptions of that individual.' "  (*Minifie, supra*, 13 Cal.4th at pp. 1065-1066.)  Thus, "[t]he law [of self-defense] recognizes that the objective component is not measured by an abstract standard of reasonableness but one based on the defendant's perception of imminent harm or death.  Because his state of mind is a critical issue, he may explain his actions in light of his knowledge concerning the victim."  (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1094.)

Applying these principles, the trial court properly instructed the jury that to determine whether defendant's beliefs were reasonable, it had to "consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed."  Because no evidence showed that M.H. had threatened defendant, or that defendant knew

10

that M.H. had previously threatened others, the trial court rightly refused the give the more focused instruction that defendant requested. Given that defendant was unaware of the victim's prior threatening conduct, such conduct was not relevant to show defendant's state of mind for purposes of self-defense. (See, e.g., *Minifie, supra,* 13 Cal.4th at pp. 1065-1069.) Indeed, as the People note, the *reasonableness* of a defendant's beliefs is necessarily determined by what he is aware of, *not* from circumstances entirely unknown to him.

To the extent the optional bracketed language at issue fails to include an *express* knowledge component, we conclude that a knowledge requirement is nonetheless implicit in the language. We reach this conclusion based on the well-settled rules regarding self-defense (see, e.g., *People v. Tafoya, supra,* 42 Cal.4th at p. 165 [evidence that a person was dangerous was relevant to the defendant's claim of self-defense *only if* the defendant knew of the person's reputation for dangerousness]; *People v. Humphrey, supra*, 13 Cal.4th at p. 1094), and on the remaining portions of CALCRIM No. 505, which do include knowledge requirements. (See CALCRIM No. 505 ["consider all the circumstances as they were *known to* and appeared to the defendant and consider what a reasonable person in a similar situation *with similar knowledge* would have believed"; "[t]he defendant's belief that [he or someone else] was threatened may be reasonable even if [he] *relied on information* that was not true"]; "[i]f you find that the *defendant knew* that [the victim] had threatened or harmed others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable"]; *People v. Burgener, supra*, 41 Cal.3d at p. 538 [court considers jury instruction as a whole and not merely parts of an instruction]; see also *People v. Snyder* (1982) 32 Cal.3d 590, 592 [although former section 12021 (prohibiting felons from possessing firearms) did not contain an express knowledge requirement, the statute contained an implied knowledge requirement].)

11

The fact that a victim's prior instances of violent conduct may be admissible under certain circumstances[5] does not lead to the conclusion that the court erred in omitting the requested bracketed language. The admissibility of evidence to show a *victim's* conformity with a violent character is an entirely different issue from whether a *defendant's* conduct or belief was reasonable when the defendant had no knowledge of the victim's violent character. While the former focuses on the victim's conduct, the latter focuses on the defendant's state of mind.

For this reason, defendant's reliance on *People v. Moreno* (2011) 192 Cal.App.4th 692, *People v. Wright* (1985) 39 Cal.3d 576, and *People v. Shoemaker* (1982) 135 Cal.App.3d 442 is misplaced. Those cases considered whether evidence of the victim's violent character was admissible to show that the victim acted in conformity with that character. (*Moreno,* at p. 702; *Wright,* at pp. 586-587; *Shoemaker*, at p. 448.)

Here, there was no issue regarding the admissibility of M.H.'s prior threatening conduct; the jury heard that M.H. had threatened D.C. at some point before the deadly incident with defendant, and that Randy had seen M.H. threaten Dwight before the day of the shooting. Instead, the instructional issue centered on whether the jury could consider M.H.'s alleged prior acts of violence in determining whether defendant's beliefs and actions in killing him were reasonable. Because no evidence showed defendant knew of the victim's prior violent conduct, the jury could not have considered that evidence when evaluating the reasonableness of defendant's conduct and beliefs for purposes of his self-

---

[5] Evidence Code section 1103, subdivision (a) provides: "In a criminal action, evidence of the character or trait of character (in the form of . . . evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by [Evidence Code] Section 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character. [¶] (2) Offered by the prosecution to rebut evidence adduced by the defendant under paragraph (1)."

defense claim, even if it could consider the evidence in deciding whether M.H. was the aggressor, as defense counsel argued.

## II

### *Unauthorized Sentence*

Defendant contends the trial court improperly imposed a five-year term for a prior serious felony enhancement under section 667, subdivision (a)(1) because the information did not allege the enhancement nor did he admit the enhancement at trial. We agree.

### *Background*

For count I, the information alleged, "pursuant to . . . section(s) 667(b) through (i)" (the statute that defines a strike), that defendant had suffered a prior serious or violent felony conviction or juvenile adjudication in August 2005 for assault with a deadly weapon (§ 245, subd. (a)(1)) in Plumas County Superior Court case No. 053192. It further alleged, "pursuant to . . . section 667.5(b)" (the statute that defines a prior prison term enhancement), that defendant had suffered four other convictions. The information did not specifically allege a prior serious felony conviction enhancement under section 667, subdivision (a)(1).

After the jury found defendant guilty, he agreed to admit the allegations that he had suffered the prior assault conviction and one prior prison term "as alleged" in the information. At no time during the admission colloquy did either the prosecutor or the court refer to a five-year prior serious felony enhancement under section 667, subdivision (a)(1), and the presentence probation report included a prison prior and section "667(b)-(i)" enhancements, but did not mention a potential five-year enhancement under section 667, subdivision (a)(1).

The prosecutor's sentencing memorandum included the first reference to a five-year sentence enhancement under section 667, subdivision (a)(1). At the sentencing hearing, the trial court stated: "Then we also have the [section] 667(a)(1) prior and the

13

[section] 667.5(b) prior." Defense counsel did not respond to the court's reference to the section "667(a)(1) prior." Thereafter, the court imposed the middle term, "doubled in light of the strike prior pursuant to [section] 667(b) through (i)" and, after stating that "[defendant] ha[d] admitted the prior for the five-year enhancement," imposed a consecutive five years plus one year for the prior prison term under section 667.5, subdivision (b). Defense counsel did not object to the five-year enhancement under section 667, subdivision (a)(1).[6]

*Analysis*

Under section 1170.1, subdivision (e), "[a]ll enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." (§ 1170.1, subd. (e).)

In *People v. Nguyen* (2017) 18 Cal.App.5th 260, 272 (*Nguyen*), under circumstances substantially similar to those presented here (*id.* at p. 262), the court relied on *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*) for the proposition that sentence enhancements under section 667, subdivision (a) cannot be imposed unless the enhancements were expressly pleaded in the charging documents. Where charging language specifically states that a fact is alleged to invoke one particular statute, *Nguyen* found it is insufficient to adequately inform the accused that the People will use it to invoke a different statute. (*Nguyen,* at pp. 266, 272.)

That does not mean, as the court in *Nguyen* emphasized, that an information has to cite the applicable enhancement statute. (*Nguyen, supra,* 18 Cal.App.5th at p. 267.) The court recognized that it might be "sufficient to allege that the defendant has a certain

---

[6] The People concede that defendant did not forfeit his claim that the five-year enhancement constitutes an unauthorized sentence even though his trial counsel did not object below. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

14

prior serious felony conviction 'for enhancement purposes' or 'for purposes of a five-year enhancement.' " (*Ibid.*)

We agree with *Nguyen*. Although the People argue *Nguyen* was wrongly decided, the court in *Nguyen* correctly reasoned that because section 1170.1, subdivision (e) requires that all enhancements "be alleged in the accusatory pleading," and either admitted by the defendant in open court or found to be true by the trier of fact, it is not enough to merely allege the fact of the prior conviction without further alleging that conviction of the current offense will subject the sentence to enhancement under the specific statutory provision. (*Nguyen, supra,* 18 Cal.App.5th at pp. 265-266.)

To the extent the People argue *Nguyen* erred in relying on *Mancebo, supra*, 27 Cal.4th 735, or that *Mancebo* is otherwise inapt, we likewise disagree. In *Mancebo*, the Supreme Court held that the trial court's use of an unpled multiple victim circumstance to impose a one strike sentence violated the express pleading provisions of the One Strike law (§ 667.61, subd. (f)), even though the defendant was charged with and found guilty of offenses against two victims. (*Mancebo,* at pp. 743-745.) In so finding, the court recognized that a criminal defendant is entitled to sufficient notice of the enhancements alleged against him so that he may calculate his potential prison exposure. (*Id.* at p. 752 ["in many instances a defendant's decision whether to plea bargain or go to trial will turn on the extent of his exposure to a lengthy prison term"].) While *Mancebo* considered the One Strike law, as the *Nguyen* court pointed out, and we agree, there is no basis "to distinguish the language of . . . section 667.61, former subdivision (i) ('alleged . . . and . . . either admitted . . . or found to be true') from the language of . . . section 1170.1, subdivision (e) ('alleged . . . and either admitted . . . or found to be true')." (*Nguyen, supra,* 18 Cal.App.5th at p. 266.)

Here, the information affirmatively indicated that the prior conviction was being pleaded *solely* for purposes of the Three Strikes law, and it did not cite the prior serious felony conviction statute or otherwise refer to the enhancement (§ 667, subd. (a)(1)).

15

Where "the People allege a prior serious felony conviction, and when they cite the three strikes law but do *not* cite the prior serious felony conviction statute, we can only conclude that they have made 'a discretionary charging decision.' " (*Nguyen, supra*, 18 Cal.App.5th at p. 267, fn. omitted.)  Because the five-year prior serious felony enhancement under section 667, subdivision (a)(1) was not pleaded and proved and defendant did not admit the enhancement during trial, the court erred in subsequently imposing a five-year term for the enhancement.  We shall order the unauthorized sentence stricken.[7]

## III

### *Clerical Error on the Abstract of Judgment*

The abstract of judgment incorrectly specifies the total term imposed on count I as six years.  The six-year term on count I was doubled to 12 years for the strike prior.  We shall order the abstract of judgment be corrected to indicate the total term on count I as 12 years.

## DISPOSITION

The five-year prior serious felony enhancement under Penal Code section 667, subdivision (a)(1) is stricken.  In addition, the trial court is directed to correct the abstract of judgment to indicate the total term on count I as 12 years.  As so modified, the

---

[7]  An appellate court may correct a legal error resulting in an unauthorized sentence at any time.  (*People v. Scott, supra*, 9 Cal.4th at p. 354 & fn. 17.)  Given our conclusion, we need not address defendant's remaining due process, ineffective assistance, or Senate Bill No. 1393 (2017-2018 Reg. Sess.) arguments.

judgment is affirmed.  The court clerk is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


                                               _____KRAUSE_____, J.


We concur:


_____HULL_____, Acting P. J.


_____BUTZ_____, J.

17