Filed 7/17/24  P. v. McCreary CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B327302 |
| Plaintiff and Respondent, | (Los Angeles County Superior Ct. No. NA110819) |
| v. | |
| THOMAS TERRELL McCREARY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James D. Otto, Judge. Affirmed.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Charles S. Lee, Deputy Attorneys General.

Thomas McCreary (defendant) challenges his conviction of first degree murder, arguing the trial court made prejudicial errors in instructing the jury, the evidence was insufficient to support first degree murder, and the transferred intent doctrine underlying his conviction is not a valid theory of murder in California. We conclude the court properly instructed the jury, substantial evidence supports the conviction, and transferred intent remains a valid doctrine under California Supreme Court precedent. We affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

### The shooting

In the early morning of December 1, 2018, defendant, his nephew Bryson Garrett, and friend Jovan "Headache" Harris were part of a group going to their cars in a Long Beach parking lot. Jacob Cisneros, sisters Jacqueline and Stephanie Herrera,[1] and Breanna Alexander were in a Prius. Anna Perez was in another group in a Mercedes.

After Cisneros and Jacqueline were seen leaning on defendant's Impala, defendant's group confronted Cisneros's group. A fight broke out, during which Harris punched Cisneros, and struck Stephanie when his fist glanced off Cisneros. The two groups returned to their vehicles, but Alexander, angry that Stephanie had been hit, grabbed a skateboard, ran back, and struck defendant's Impala several times.

From inside his Impala defendant yelled "get down" to Garrett, then fired a shot, which hit the Impala's ceiling.

---

[1] As some participants share the same last name, we will refer to them by first name. No disrespect is intended.

Defendant got out and fired four more shots at Alexander as she fled. One bullet fatally struck Perez in the chest. After the shooting, defendant got into his car and drove off.

**The charges, trial, and sentencing**

Defendant was charged with first degree murder and possession of a firearm by a felon. At trial, defendant called no witnesses. In closing argument, his attorney did not dispute defendant was the shooter or the shooting resulted in Perez's death. Instructions on self-defense and defense of others were requested and denied.

Defendant was found guilty of first degree murder and possession of a firearm by a felon. The firearm allegation was found true. Defendant was sentenced to 25 years to life for murder, which was tripled to 75 years to life pursuant to the "Three Strikes" law, plus an additional 10 years for a firearms enhancement. For the possession of a firearm by a felon charge, defendant received two years, doubled to four years pursuant to the Three Strikes law. The result was a sentence to prison for 89 years to life.

Defendant filed a timely appeal of the first degree murder conviction.[2]

## CONTENTIONS ON APPEAL

Defendant contends the court erred by (1) misdescribing the malice element when instructing the jury, (2) failing to instruct on assault, (3) failing to instruct on involuntary manslaughter, (4) failing to instruct on attempted voluntary

---

[2] Defendant is not challenging his conviction for possession of a firearm.

manslaughter, and (5) denying defense instructions on self-defense and imperfect self-defense. Defendant also argues the transferred intent doctrine is unconstitutional and the cumulative effect of these errors requires reversal.

## DISCUSSION

## I.  There was no error in the malice instructions

Defendant contends the trial court erred by failing to instruct the jury that malice cannot be imputed solely based on participation in a crime. Because the evidence showed defendant was the actual shooter and not participating in the crime by aiding and abetting another, there was no error in omitting this instruction.

### A.  *Standard of review*

We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) The trial court has a duty to instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case. (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*), disapproved on another ground by *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.)

An appellate court's task is to decide if the trial court fully and fairly instructed the jury on the applicable law. (*People v. Bates* (2019) 35 Cal.App.5th 1, 9.) The correctness of jury instructions is to be determined from the entire charge of the trial court, not from a consideration of parts of an instruction or a particular instruction. (*Ibid*.) If reasonably possible, instructions are interpreted to support the judgment rather than to defeat it. (*Ibid*.)

4

**B.** *Analysis*

It was the prosecution's theory defendant personally murdered Perez, under the doctrine of transferred intent, either by shooting at Alexander with the intent to kill (express malice) or by shooting at Alexander with a conscious disregard for life (implied malice). The record showed defendant repeatedly firing a gun at Alexander from close range as she fled, ultimately striking Perez.

The jury was instructed on express and implied malice with CALCRIM No. 520, which explained a defendant was guilty of murder if he committed an act that caused death with "malice aforethought," either express or implied. The jury was also instructed with the definition of first degree murder, CALCRIM No. 521, and transferred intent, CALCRIM No. 562. The instruction states the law necessary for the jury to determine whether defendant personally harbored express or implied malice when he shot at Alexander but killed Perez. CALCRIM No. 562, the transferred intent instruction, explained proof that the defendant personally acted with the intent to kill, i.e., malice, was required.

The jury received no instruction that suggested they could find defendant guilty of murder for participating in another's crime, for example, a theory of aiding and abetting liability or the natural and probable consequences doctrine.

Section 188, subdivision (a)(3) provides "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." The plain language and legislative intent behind this provision show it was meant to eliminate the imputation of malice to an aider and abettor based solely on their participation in an underlying crime under the natural and probable

5

consequences doctrine. (See *People v. Gentile* (2020) 10 Cal.5th 830, 838-839, 842-843, superseded by statute on other grounds as stated in *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 584.)

Section 188, subdivision (a)(3) uses the phrase "participation in a crime," which is naturally read to refer to crimes committed by multiple participants. If the Legislature meant for the provision to apply to a lone perpetrator, it could have simply stated malice shall not be imputed "based solely on the commission of a crime." Instead, the statute refers to "participation," which implies involvement with others in an offense. (See Black's Law Dict. (10th ed. 2014) p. 1294, col. 1 [defining "participation" as "[t]he act of taking part in something, such as a partnership, a crime, or a trial"].)

Here, the evidence showed defendant acted alone in the shooting. He was the sole perpetrator, not an aider and abettor or coparticipant. Because section 188, subdivision (a)(3) was intended to eliminate natural and probable consequences liability for aiders and abettors who participate with others in an underlying crime, instructing on it would have been improper in that it had no application to the facts of this case.

Accordingly, there was no instructional error, and the jury was properly instructed on the mental state required for murder, which is an intent to kill (express malice) or conscious disregard for life (implied malice). The instructions given allowed the jury to evaluate whether defendant personally harbored the requisite malice. No further instruction based on section 188 was required.

## II.    The evidence did not warrant instructions on assault

Defendant argues the trial court erred by failing to instruct sua sponte on assault. Assault is "an unlawful attempt, coupled

6

with a present ability, to commit a violent injury on the person of another." (§ 240; see *People v. Licas* (2007) 41 Cal.4th 362, 366.)

A trial court must instruct the jury on general principles of law relevant to issues raised by the evidence. (*Breverman, supra,* 19 Cal.4th at p. 154.) However, the court is not obligated to instruct on theories that lack substantial evidentiary support. (*Id.* at p. 162.)

Considering the evidence in the light most favorable to defendant, the record lacks support for the claim he committed an assault without an intent to kill. After Alexander struck defendant's car with a skateboard, defendant yelled "get down" to his passenger, suggesting he intended to shoot at Alexander from inside the vehicle and had formed a plan to use lethal force in response to his car being hit by a skateboard.

Then after firing the initial shot from inside the car, defendant got out and continued firing multiple shots at Alexander as she ran away. One of those shots struck Perez in the chest, killing her. The shots were fired at a level trajectory that endangered human life. The evidence shows defendant's act of shooting multiple times at Alexander at close range while she fled was an act that by its nature would foreseeably and likely result in a fatal injury. Defendant's actions in repeatedly shooting at a fleeing person at a height dangerous to human life indicates defendant acted with a purpose to kill, rather than some other intent.

Thus, this evidence—even viewed in a light favorable to defendant—shows he acted with an intent to kill, not to merely commit an assault. The court did not err by omitting instructions on assault because that theory lacked substantial evidentiary

support. The jury was properly instructed on murder and manslaughter, the theories that were supported by the evidence.

## III. The evidence did not warrant instructions on involuntary manslaughter

Defendant also contends the trial court erred by failing to instruct on the lesser offense of involuntary manslaughter. A killing without malice "'in the commission of an unlawful act, not amounting to [a] felony'" is involuntary manslaughter. (*People v. Thomas* (2012) 53 Cal.4th 771, 814.) The crime is a lesser included offense of malice murder. (*Id.* at p. 813.) The mens rea for involuntary manslaughter is criminal negligence. (*People v. Butler* (2010) 187 Cal.App.4th 998, 1006.) This exists when the defendant engages in conduct that is "'"aggravated, culpable, gross, or reckless"'"; i.e., conduct that is "'"such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard of human life or an indifference to consequences."'" (*Id.* at p. 1008.)

The trial court must instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. (*Breverman, supra*, 19 Cal.4th at p. 162.) However, the trial court is not obligated to instruct on theories that have no such evidentiary support. (*Ibid.*) "'Substantial evidence' in this context is "'evidence from which a jury composed of reasonable [persons] could . . . conclude[]'" that the lesser offense, but not the greater, was committed." (*Ibid.*) We review the issue de novo and independently determine whether a lesser included offense instruction should have been given. (*People v. Avila* (2009) 46 Cal.4th 680, 705.)

8

The record does not contain substantial evidence defendant killed without malice in the course of a criminally negligent unlawful act. Instead, the record shows defendant purposely fired multiple shots at close range at Alexander as she fled in a public parking lot. Such conduct created a high risk of death and showed defendant acted with a deliberate intent to kill. He did not shoot by accident while waving a loaded gun at Alexander but purposefully acted to take her life. There is no substantial evidence that defendant acted without any realization his conduct posed a risk to life.

It was thus not error to omit an involuntary manslaughter instruction.

## IV. An instruction on attempted voluntary manslaughter was not warranted by the evidence

Defendant contends the trial court erred by failing to instruct the jury if they found defendant attempted to engage in the voluntary manslaughter of Alexander, his criminal liability for Perez's death would be voluntary manslaughter under the transferred intent doctrine.

A trial court is required to instruct the jury on general principles of law relevant to issues raised by the evidence. (*Breverman, supra*, 19 Cal.4th at p. 154.) However, the court is not obligated to instruct on theories that lack substantial evidentiary support. (*Id*. at p. 162.)

Voluntary manslaughter is a lesser included offense of murder when the requisite mental element of malice is precluded by heat of passion or an unreasonable self-defense. (*People v. Elmore* (2014) 59 Cal.4th 121, 133.) The jury here was instructed on heat of passion voluntary manslaughter and transferred intent. Thus, if the jury had found defendant acted under heat of

passion when he shot at Alexander under the instructions given, it would have reduced the murder to voluntary manslaughter. The killing of Perez then would have been voluntary manslaughter under the transferred intent as it defines the crime as the "same as if the intended person had been killed."[3] No further instruction was required.

The jury was thus instructed on the pertinent theories of murder and manslaughter as supported by the evidence. There was no instructional error.

## V. It was not error to deny defendant's request for self-defense and imperfect self-defense instructions

Defendant contends the court should have instructed on self-defense because the evidence showed Alexander committed felony assault with a deadly weapon by striking his car with a skateboard, allowing defendant to defend himself and his passengers from the ongoing threat posed even as Alexander fled. This argument lacks merit.

### A. *Applicable legal principles*

"For killing to be in self-defense, the defendant must actually and reasonably believe in the need to defend." (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.) "If the belief subjectively exists but is objectively unreasonable, there is 'imperfect self-defense,' i.e., 'the defendant is deemed to have acted without malice and cannot be convicted of murder,' but can be convicted of manslaughter." (*Ibid.*)

---

[3]     CALCRIM No. 562 provides "[i]f the defendant intended to kill one person, but by mistake or accident killed someone else instead, then the crime, if any, is the same as if the intended person had been killed."

"The subjective elements of self-defense and imperfect self-defense are identical. Under each theory, the appellant must actually believe in the need to defend himself against imminent peril to life or great bodily injury. To require instruction on either theory, there must be evidence from which the jury could find that appellant actually had such a belief." (*People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1262.)

"A trial court has no duty to instruct the jury on a defense . . . unless the defense is supported by substantial evidence." (*People v. Curtis* (1994) 30 Cal.App.4th 1337, 1355.)

**B.** *No substantial evidence of self-defense or imperfect self-defense*

The trial court properly denied instructions on self-defense and imperfect self-defense because the record lacked substantial evidence to support these theories. What the evidence established was after a verbal confrontation between the two groups, Alexander hit the windows of defendant's car, but did not break them. In response, defendant yelled "get down" to his passenger, fired a shot inside the car, exited, and then rapidly fired multiple shots at Alexander as she fled.

There was no evidence that Alexander's act of striking defendant's car with a skateboard caused defendant to fear imminent death or great bodily injury requiring an immediate lethal response or that Alexander verbally threatened defendant, displayed any weapons besides the skateboard, or had any ability to inflict serious harm on the occupants inside the car.

No evidence was presented that defendant subjectively feared for his life when he shot at Alexander. Moreover, defendant continued shooting at Alexander after she ran away, when any conceivable threat had ceased. Defendant argues he

11

was still justified in shooting at Alexander as she fled because she had not left the scene and could have returned with armed associates. This argument rests on sheer speculation. There is no evidence Alexander said or did anything suggesting she would return with others to attack.

Defendant also contends he was shooting merely to frighten Alexander rather than kill her. However, firing multiple gunshots at a fleeing person at a level and angle endangering human life does not support a reasonable inference defendant was merely trying to scare Alexander rather than shoot her. On this record, we find no substantial evidence defendant actually believed in the need for self-defense, either reasonably or unreasonably. Objectively, the circumstances showed defendant faced no imminent threat of death or great bodily injury, and no evidence suggested he subjectively feared such harm. Accordingly, the court did not err by refusing to instruct on self-defense or imperfect self-defense.

## VI. Sufficient evidence supports the first degree murder conviction

Defendant contends there was insufficient evidence of premeditation and deliberation to support his first degree murder conviction. Viewing the record in the light most favorable to the judgment, we conclude otherwise, that substantial evidence does support the jury's first degree murder verdict.

### A. *Standard of review*

For first degree murder, the prosecution is required to prove beyond a reasonable doubt that defendant acted with premeditation and deliberation. (§ 189, subd. (a) [defining first degree murder to include "any other kind of willful, deliberate, and premeditated killing"].) ""Deliberation" refers to careful

12

weighing of considerations in forming a course of action; "premeditation" means thought over in advance.'" (*People v. Sandoval* (2015) 62 Cal.4th 394, 424.) ""'The process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.'"'" (*Ibid.*)

The California Supreme Court has identified three guideposts bearing on whether a defendant has acted with premeditation and deliberation: (1) the defendant's motive, (2) any planning activity, and (3) the manner of killing. (*People v. Cage* (2015) 62 Cal.4th 256, 276.) In evaluating whether there is sufficient evidence to sustain a jury's findings of premeditation and deliberation, we examine whether the record, viewed in the light most favorable to the verdicts, contains "evidence which is reasonable, credible, and of solid value from which a rational trier of fact could find [the] defendant guilty beyond a reasonable doubt." (*Cage, at* p. 275.)

**B.** *Analysis*

Here, there is substantial evidence of all the necessary factors supporting the jury's finding that defendant acted with premeditation and deliberation.

**1.** *Motive*

First, prior to the shooting, defendant had confronted Cisneros and Jacqueline for merely leaning against his car. Defendant's hostile reaction to this relatively minor infringement on his property showed his quick temper and willingness to escalate conflict. Alexander then engaged in the more serious act of intentionally striking the windows of defendant's car with a

13

skateboard. From this, the jury could reasonably infer that defendant, already outraged by others touching his car, was provoked to use lethal force by Alexander's attack on his car. The evidence of defendant's propensity for violence provides a motive for defendant's decision to shoot at Alexander and kill Perez.

### 2. *Planning*

Second, rather than immediately firing on Alexander in an unconsidered impulse, defendant first took steps suggesting he was weighing his course of action. Defendant readied his firearm and shouted a warning to "get down" so his nephew could duck. The jury could reasonably find this conduct reflected a plan to ensure his nephew was out of the line of fire so defendant could clearly aim and shoot at Alexander. Moreover, defendant then got out of the vehicle to continue shooting at Alexander. The jury could reasonably deduce defendant used this pause between shots to position himself for a more clear and accurate angle to fire and thus ensure he could hit his target. This sequence of events, with defendant readying his gun, warning his passenger, moving into a better shooting position, support the conclusion defendant was planning and reflecting on his intention to shoot and kill Alexander, rather than acting rashly.

### 3. *Manner of killing*

Third, the manner of shooting showed a preconceived design to take Alexander's life. Although Alexander posed no threat to defendant once she fled, defendant nevertheless fired multiple shots at her retreating figure. He specifically shot at a level trajectory endangering human life, resulting in a bullet striking Perez in the chest. From the evidence of defendant continuing to fire at a fleeing victim even after the first shot, the jury could reasonably conclude he was acting with a

14

predetermined plan to kill Alexander. The firing of multiple shots specifically directed at the fleeing Alexander, rather than a single shot in the heat of passion, also showed a considered design to kill her. Therefore, substantial evidence supports the jury's finding defendant acted with premeditation and deliberation.

## VII. Transferred intent doctrine is well established

Defendant contends that in California the transferred intent doctrine is unconstitutional because it is not codified in any statute. As the doctrine is well-established in California case law, we reject this contention.

Transferred intent is a common law doctrine that "'survived the enactment of California's murder statute.'" (*People v. Bland* (2002) 28 Cal.4th 313, 320.) No statute purports to abrogate the transferred intent doctrine. The California Supreme Court has affirmed that transferred intent is a recognized theory of murder liability that "connotes a *policy*" that a "defendant who shoots at an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark." (*People v. Scott* (1996) 14 Cal.4th 544, 546, 551.) We are bound by this clear precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Accordingly, we reject defendant's contention his murder conviction under a transferred intent theory violated his constitutional rights. The jury properly found him guilty of first degree murder upon finding he harbored express malice, an intent to kill, as to his intended target, which transferred to the unintended victim under well-established California law. Defendant's constitutional challenge fails.

15

## VIII. The cumulative error doctrine does not apply

Defendant argues the cumulative prejudicial effect of the alleged instructional and other errors requires reversal. As we have found no errors and that sufficient evidence supports the first degree murder conviction and the transferred intent doctrine is constitutional, there are no individual errors to accumulate. The cumulative error doctrine does not apply.

## DISPOSITION

The judgment is affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.