Filed 9/20/24  P. v. Chavez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>PEDRO CHAVEZ,<br><br>    Defendant and Appellant. | C099194<br><br>(Super. Ct. No. 19FE011573) |

Defendant Pedro Chavez punched N.D. multiple times in the face, causing injuries to her nose and mouth.  N.D. testified that defendant had restrained her, raped her, and tried to suffocate her.  When she bit him to get away, he punched her repeatedly.  Defendant described a different version of events, saying he awoke to find N.D. on top of him.  He tried to push her off, she bit his fingers, and he punched her.

A jury acquitted defendant of rape, assault with intent to commit rape, and false imprisonment, but convicted him of assault by means of force likely to produce great bodily injury.  The jury found true an allegation that defendant inflicted great bodily injury during the assault, but it also found not true the allegation that the crime involved great violence or other circumstances disclosing a high degree of cruelty, viciousness, or callousness.  The trial court sentenced defendant to five years in state prison.

1

Defendant now contends (1) the trial court should have instructed the jury sua sponte on his right to stand his ground and not retreat from an assault, and also his right to use reasonable force to prevent the commission of a felony; and (2) the trial court abused its discretion in imposing the great bodily injury enhancement without being aware of its discretion to dismiss the enhancement, and in concluding that defendant was ineligible for probation without finding that he willfully inflicted great bodily injury.

Concluding that defendant's contentions are forfeited or lack merit, we will affirm the judgment.

BACKGROUND

On the evening of May 27, 2019, defendant went to the house of his sisters Daniela and Gabriela. Gabriela was staying at her boyfriend's house that night, so defendant planned to sleep in her room. Earlier in the day, Daniela went to San Francisco with her boyfriend and others, including N.D., a friend she met at Sacramento City College. They returned to the house at around midnight. Defendant was in Gabriela's room when they arrived.

When Daniela and her group got to the house, they started playing music, hanging out, and drinking beer. Defendant eventually emerged from Gabriela's room and joined them in the living room. Defendant, who was 18 at the time, drank three or four beers and became intoxicated. N.D., who was 19 years old at the time, had a couple of beers.

At some point, Daniela and her boyfriend got into an argument and went outside. N.D. came outside and said she was going to sleep in Gabriela's room with defendant. N.D. explained, "I'll sleep by his feet so it's not weird or anything." Daniela went inside to check on defendant, who was "passed out" on the couch. She nudged him awake and asked if he was okay, and he asked her to get him a pillow. N.D. pulled on defendant's leg and suggested they go to his sister's room, saying she would take care of him. Defendant got up and accompanied N.D. to Gabriela's room. Daniela followed them

2

to the room and saw defendant lie down on the bed. N.D. told her, "I'll take care of him." Daniela went back outside.

Daniela, N.D. and defendant testified consistently regarding the foregoing events. But N.D. and defendant testified differently regarding what happened next in Gabriela's bedroom.

According to N.D., she got on the bed with defendant and immediately fell asleep. When she woke up, defendant was on top of her with his pants down. He was choking her with one hand and taking her pants down with the other while pinning her to the bed. Defendant inserted his penis into her vagina as she told him to stop. N.D. then rolled off the bed and tried to leave, but defendant pinned her to a wall. N.D. tried to yell for help but defendant covered her mouth with his hand. N.D. bit his hand, and defendant responded by punching her in the nose and mouth, causing her to fall to the floor. N.D. tried to get up and run to the door, but defendant blocked her path and dragged her by the hair to the ground. He choked her with both hands, punched her several more times, and used a pillow or cloth to try to suffocate her.

In contrast to N.D.'s account of events, defendant testified that when he woke up, N.D. was on top of him. She was straddling him, his shorts and boxers were around his knees, and he felt her on top of his penis. Defendant told her to stop and tried to push her off of him, but N.D. said to wait because she was almost done. When defendant again tried to push her off of him, his hand pushed into her mouth, and N.D. bit his fingers. Defendant reacted by punching her several times in the face. N.D. fell off of the bed and hit the wall on her way to the floor. Defendant got up, stood there in shock for a moment, and then put his pants back on.

Daniela testified that she and her boyfriend went to bed in her room sometime between 4 and 5 a.m. Ten to 20 minutes later, Daniela heard a thump and went to her sister's room to find out what it was. N.D. was on the ground in front of the bed.

3

She had blood on her and defendant "looked confused, pale, scared, crying." Daniela told defendant to leave and he did so.

A physical examination of N.D. revealed a nasal bone fracture as well as facial bruising and abrasions. During a subsequent sexual assault examination, N.D. described a sexual assault. The nurse practitioner who performed the exam testified that certain injuries were consistent with being punched and also with possible strangulation. The nurse did not observe evidence of a sexual assault.

The jury convicted defendant of assault by means of force likely to produce great bodily injury, and found that he inflicted great bodily injury during the assault. The trial court sentenced defendant to five years in state prison.

## DISCUSSION

## I

Defendant claims the trial court should have instructed the jury, sua sponte, regarding (a) his right to stand his ground and not retreat from an assault, and (b) his right to use reasonable force to prevent the commission of a felony.

## A

Defendant claims the trial court should have instructed sua sponte on his right to stand his ground and not retreat from an assault.

"A trial court must instruct on the general principles of law applicable to a case" and possesses a sua sponte duty to instruct " 'on any defense, including self-defense, . . . when there is substantial evidence supporting the defense, and the defendant is either relying on the defense or the defense is not inconsistent with the defendant's theory of the case. [Citation.]' [Citation.]" (*People v. Bates* (2019) 35 Cal.App.5th 1, 9 (*Bates*).)

Here, with respect to the crime of assault by means of force likely to produce great bodily injury, defendant claimed self-defense, and the trial court instructed the jury with CALCRIM No. 3470 regarding self-defense. It also instructed the jury with CALCRIM

4

No. 3472, that a person may not provoke a fight or quarrel with the intent to create an excuse to use force. In addition, the trial court instructed the jury with CALCRIM No. 3474, that the right to use force in self-defense exists only as long as the danger reasonably appears to exist.

Defendant does not assert on appeal that the foregoing self-defense instructions were incorrect. Instead, he claims the trial court should have supplemented them with the following bracketed portion of CALCRIM No. 3470: "A defendant is not required to retreat. He or she is entitled to stand his or her ground and defend himself or herself and, if reasonably necessary, to pursue an assailant until the danger . . . has passed. This is so even if safety could have been achieved by retreating." (CALCRIM No. 3470.)

But defendant did not request that the bracketed language be included in the instruction, or object when it was not included. " 'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.]" (*People v. Guiuan* (1998) 18 Cal.4th 558, 570 (*Guiuan*); see *People v. Landry* (2016) 2 Cal.5th 52, 99-100.) Defendant's assertion that this optional bracketed language should have been included in the instruction given to the jury is therefore forfeited.

B

Defendant also argues the trial court had a sua sponte duty to instruct on his right to use reasonable force to prevent the commission of a felony. Specifically, he argues the trial court was required to supplement the standard self-defense instructions with CALCRIM No. 505, the pattern jury instruction on self-defense in a homicide case. (*Bates, supra*, 35 Cal.App.5th at p. 7.)

Defendant cites no authority holding that a trial court has a sua sponte duty to instruct with CALCRIM No. 505 in a non-homicide case like this one, and we know of no such duty. To the extent defendant argues the jury would have benefitted from certain

language found in CALCRIM No. 505 and not in CALCRIM No. 3470, it was incumbent upon him to request such clarifying or amplifying language. (*Guiuan, supra*, 18 Cal.4th at p. 570.) He did not do so.

The claim of instructional error fails to the extent it assumed a sua sponte duty; it is otherwise forfeited.

## II

Defendant further contends the trial court abused its discretion at sentencing by (a) imposing the great bodily injury enhancement without being aware of its discretion to dismiss the enhancement, and (b) concluding that defendant was ineligible for probation without finding that he willfully inflicted great bodily injury. These contentions are also forfeited.

## A

We begin with the contention that the trial court imposed the great bodily injury enhancement without being aware of its discretion to dismiss the enhancement.

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) amended Penal Code[1] section 1385 to provide that a trial court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal is prohibited by an initiative statute. (§ 1385, subd. (c)(1), (2); *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295.) In exercising its discretion, the trial court shall give great weight to evidence offered by the defendant that enumerated mitigating circumstances are present. (*Mendoza,* at p. 295.) One such mitigating circumstance is that the current offense is connected to prior victimization or childhood trauma. (§ 1385, subd. (c)(2)(E).) Subdivision (c)(4) adds that the enumerated mitigating circumstances are not exclusive. (§ 1385, subd. (c)(4).)

---

[1] Undesignated statutory references are to the Penal Code.

Defendant argues the probation report indicated he experienced childhood trauma related to being sexually assaulted by a female family member. He also cites his young age at the time of the offense, his status as a first-time offender, the jury's finding that the crime did not involve great violence or a high degree of cruelty, viciousness, or callousness, and the fact that the three-year great bodily injury enhancement more than doubled defendant's sentence because the trial court imposed the low term of two years for the assault. According to defendant, "[t]he sentencing transcript . . . reflect the trial court was unaware of any aspect of its authority" to dismiss the enhancement.

Defendant was sentenced on August 4, 2023, more than a year and a half after the effective date of Senate Bill 81. But his trial counsel did not object to the imposition of the enhancement or ask that it be dismissed under section 1385, subdivision (c). The failure to do so forfeited the contention on appeal. (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374; *People v. Scott* (1994) 9 Cal.4th 331, 351-354 (*Scott*).)

B

We turn next to defendant's contention that the trial court determined defendant was ineligible for probation without finding that he willfully inflicted great bodily injury.

"A defendant is presumptively ineligible for probation under section 1203, subdivision (e)(3), if he or she 'willfully inflicted great bodily injury or torture in the perpetration of the crime.'" (*People v. Lewis* (2004) 120 Cal.App.4th 837, 852 (*Lewis*).) "[T]he word 'willful' requires the defendant's intent to cause great bodily injury or torture, not merely that the crime resulted in great bodily injury or torture." (*Id*. at p. 853.)

Here, the jury determined that defendant inflicted great bodily injury. However, whether he intended to cause such injury, making him presumptively ineligible for probation, was a matter for the trial court to determine at the sentencing hearing. (*Lewis,*

7

*supra*, 120 Cal.App.4th at p. 854.)  The probation officer and both parties appear to have assumed that section 1203, subdivision (e)(3) applied.  The trial court specifically found "defendant is not eligible for probation, pursuant to Section 1203(e)(3) unless the Court finds unusual circumstances."  The trial court then cited rule 4.413(c) of the California Rules of Court, listing factors that may indicate an unusual case overcoming the presumption of ineligibility, and noted that "defendant is youthful and has no significant prior criminal history."  The trial court concluded "the nature and circumstances of this crime as compared with other instances of the same crime aggravate against a grant of probation," citing N.D.'s significant injuries.  The trial court denied probation.

Defendant argues the trial court abused its discretion by concluding he was presumptively ineligible for probation without making the required willfulness finding.  However, his trial counsel did not object or point out that such a finding was required in order for section 1203, subdivision (e)(3) to apply.  The failure to do so forfeited the contention on appeal.  (See *Scott, supra*, 9 Cal.4th at pp. 351-354.)

DISPOSITION

The judgment is affirmed.


_____/S/_____
MAURO, J.



We concur:



_____/S/_____
ROBIE, Acting P. J.



_____/S/_____
DUARTE, J.


8