Filed 3/12/25  P. v. Gonzales CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>DAVID RANDALL GONZALES,<br><br>    Defendant and Appellant. | C098298<br><br>(Super. Ct. No. 20CF03445) |

On July 17, 2020, defendant David Randall Gonzales struck J.C.[1] repeatedly with a baseball bat.  According to J.C., who previously was married to defendant's sister, defendant attacked him with a bat without provocation following a discussion about a family disagreement.  In defendant's account, J.C. poked him in the chest with the bat, defendant grabbed it, and defendant then struck J.C. with it four times.  A jury found defendant guilty of assault with a deadly weapon and found true the enhancement allegation that defendant personally inflicted great bodily injury on J.C.

---

[1]     To protect his privacy, we refer to the victim by his initials.  (Cal. Rules of Court, rule 8.90(b)(4).)

1

Defendant argues that the trial court erred by: (1) excluding evidence of what defendant had heard concerning threats made and acts of violence committed by J.C. against others, as they were relevant to defendant's self-defense claim; (2) admitting evidence related to defendant's prior convictions and the facts underlying them; and (3) failing to give the jury a unanimity instruction. Defendant further argues that even if individually harmless, the cumulative effect of these errors prejudiced him. Finally, defendant asserts that the trial court's true finding that a 2011 conviction constituted a prior strike was not supported by substantial evidence. We agree with defendant's second contention, but we find the error harmless. We also agree the trial court's finding that defendant's 2011 conviction was a prior strike is not supported by substantial evidence. We will remand for further proceedings on that allegation and otherwise affirm the judgment.

## BACKGROUND

An information charged defendant with assault with a deadly weapon (Pen. Code,[2] § 245, subd. (a)(1); count 01), and further alleged that, in committing that offense, defendant personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). The information also charged defendant with criminal threats (§ 422, subd. (a); count 02), and alleged that, in the commission of that offense, defendant personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)). The information included three, five-year prior serious felony enhancements (§ 667, subd. (a)(1)), and alleged that defendant was subject to three strikes law sentencing (see §§ 667, subd. (b)-(j), 1170.12) because he had two or more prior strike offenses, enumerating four such offenses.

---

[2]    Undesignated section references are to the Penal Code.

2

## The Prosecution's Case

J.C. and defendant were once best friends. J.C. was with defendant's sister for 12 years, and defendant's sister was the mother of J.C.'s children. However, J.C. and defendant's sister were no longer together.

On July 17, 2020, defendant was with J.C. renovating J.C.'s bathroom. At some point, defendant confronted J.C. about a recent incident in which, according to defendant's mother, J.C. had said he "wanted to whoop [defendant's] dad's ass." J.C. told defendant "[T]hat's not what happened" or that "was not true." They also talked about defendant's sister.

Later, J.C. was sitting on the couch watching television when defendant approached him holding a baseball bat. Defendant said, "You've had this coming for a while," struck J.C. on his left leg with the bat, and said, "No one calls my mom a liar and my sister a whore." Defendant then struck J.C. on the right leg. Defendant hit J.C. with the bat on the head, and then hit him "a couple more times." J.C. did not know how many times defendant struck him. J.C. threw a sleeping bag on top of himself to lessen the impact of the blows, but defendant just kept hitting him. Defendant hit J.C. at least "three more times in the head; and then my back, my legs, in my arm." J.C. exclaimed, "Stop, you're going to kill me," and defendant replied, "That's what I want to do . . . ." J.C. emerged from under the sleeping bag and jumped behind the couch. At that point, defendant "had [J.C.] over against the wall in the corner," hitting him repeatedly. J.C. lost count of how many times defendant hit him, but it was "[a]t least . . . 15 . . . ." J.C.'s children then came into the room.

Jack B.,[3] the victim's friend, arrived outside J.C.'s house and heard children screaming. Jack B. entered the room and saw J.C. in the corner bleeding. Jack B. asked,

---

[3]   To protect his privacy, we refer to the witness by his first name and last initial. (Cal. Rules of Court, rule 8.90(b)(10).)

3

"What the hell's going on," and defendant responded that "he had attacked [J.C.] with -- hit [J.C.] with a baseball bat." Jack B. told defendant to leave, defendant went out to the garage, and Jack B. followed. Defendant said to Jack B., "Let me finish him," and then, "I'll have to kill the kids, too." Jack B. told defendant he would take him to his parents' house. In Jack B.'s vehicle, defendant said that J.C. had called his mother a liar. Then he clarified, "Well, he didn't call her a liar; he said that that's not what she said."

Once they arrived at defendant's parents' home, defendant told people there that "he had beat [J.C.] in the head with a baseball bat." He also said that "he was going to kill him." Defendant repeated that a couple of times.

J.C. received three or four staples in his arm, three on his right shin, and 22 or 23 staples in the back of his head. Additionally, he would later discover that his left leg was broken. An emergency room physician testified that J.C. sustained significant lacerations on his scalp and bruising and lacerations on his extremities. J.C.'s injuries were not life-threatening or likely to cause permanent serious injury.

J.C. acknowledged he had previously told someone that defendant was bigger than he was, and that, if he ever got into a confrontation with defendant, he "would probably have to use a baseball bat." J.C. testified he did not actually threaten defendant with a bat, and that "[w]e were just joking around. I never threatened him with anything."

When asked if he had any firearms in his house, J.C. responded, "No. Ex-felon." He had not handled a firearm on the day defendant attacked him.

*The Defense Case*

Defendant's nephew testified that, before defendant's arrest, "out of nowhere," J.C. said that, if he ever got "into it" with defendant, he would "just hit [him] with a bat." Defendant's nephew told defendant about the remark.

Defendant testified on his own behalf. He acknowledged that he had been convicted of one felony in 2002, one in 2011, and two in 2013.

4

J.C. was defendant's brother-in-law for 14 or 15 years. They remained friendly, even after defendant's sister and J.C. divorced. On July 17, 2020, defendant was working on J.C.'s bathroom. At some point, J.C. started talking belligerently about defendant's mother and sister. J.C. was sitting at his kitchen table, cleaning a gun. J.C. told defendant, in a joking manner, that he should shoot defendant and his sister. J.C. put the gun away in a hutch.

Later, defendant and J.C. discussed something that happened the day before involving defendant's parents. J.C. poked defendant in the chest with a baseball bat, trying to hit him. He also told defendant, "I'll beat your ass." Defendant grabbed the bat, swung it, and hit J.C. in the left leg. J.C. bent over and defendant hit him on the head. J.C. "went down," and, when he tried to get back up, defendant hit him twice on the back. Defendant testified that he hit J.C. because J.C. came at him with the bat and defendant felt threatened. Defendant had been told that J.C. had previously said that, if he ever got into a fight with defendant, he would use a baseball bat. Therefore, defendant became fearful when J.C. poked him with the bat.

After the altercation ended, J.C.'s sons came into the room. Defendant went into the kitchen to put the baseball bat away. J.C. jumped up and "tried to run to the other side to go grab the weapon," meaning the firearm, but defendant cut him off. Defendant said he was going to call the police but J.C. urged him not to. Jack B. then arrived and took the bat.

Defendant denied ever saying that he wanted to kill J.C. and his children, and he denied saying to Jack B., "Let me finish him." Defendant acknowledged that, when he was arrested, he did not tell police that he hit J.C. with a baseball bat because J.C. threatened him. He told law enforcement that "it wasn't me, it was somebody else." According to defendant, he was trying to protect J.C. "from getting arrested with that gun . . . ."

5

*The Prosecution's Rebuttal Case*

Butte County Deputy Sheriff Vicente Arredondo searched J.C.'s house. He did not locate a gun. However, he could not testify as to where any other officer searched or whether any officer looked in places where one might find a firearm. During his interview with Arredondo, defendant never said he was threatened or that there was a gun involved in the incident.

*Verdict and Sentencing*

The jury found defendant guilty of assault with a deadly weapon and found true the allegation that, in committing that offense, defendant personally inflicted great bodily injury on the victim. The jury found defendant not guilty of criminal threats. Defendant waived a jury trial on the prior strike allegations. The trial court found true the allegations of violations of section 288 in 2002; section 245, former subdivision (a)(1) in 2011; and sections 422 and 243, subdivision (d) with a section 12022, subdivision (b)(1) personal use of a deadly or dangerous weapon enhancement in 2013. The trial court sentenced defendant to 25 years to life on the assault count and an additional three years for the infliction of great bodily injury enhancement. The trial court struck the three section 667, subdivision (a)(1) five-year prior serious felony enhancements.

DISCUSSION

I

*Exclusion of Evidence of J.C.'s Threats and Violence Toward Others*

A.    *Additional Background and Defendant's Contentions*

The prosecutor moved in limine to exclude a number of witness statements involving J.C.'s prior conduct. Such statements included allegations concerning threats to others by J.C.; an incident in which J.C. punched defendant's nephew; threats made by J.C. about defendant to others; and instances of domestic violence between J.C. and his former wife, defendant's sister.

6

In argument, the prosecutor emphasized, with regard to the domestic violence allegations, that there were allegations by both sides. The prosecutor cautioned against having "a mini-trial on those during this trial," and sought to exclude this evidence under Evidence Code section 352. The trial court deferred ruling on the matter.

Following defendant's testimony, the prosecutor reiterated her position that the domestic violence allegations should not be admitted as they were unfounded, did not result in charges, would result in undue consumption of time, and would mislead the jury.

The trial court excluded any mention of domestic violence involving J.C. The court stated it was concerned with the confusion of the issues and undue consumption of time, and it wanted to avoid "a mini-trial on those incidents."

The trial court later said that it would allow evidence of any prior acts of violence or threats by J.C. directed *at defendant*. The court then stated, however, that it was "not inclined to allow threats or acts of violence towards other members of the family. It doesn't sound like there was anybody else present in the home where this alleged incident occurred that led to the charges in this case besides [ J.C.], [defendant], and [ J.C.'s] two minor children." Defense counsel argued that if J.C. made threats toward defendant *and others*, and defendant was aware of these threats, that was relevant to defendant's state of mind. Addressing defense counsel's argument that CALCRIM No. 3470 on self-defense references a defendant's awareness of threats to others, the court stated: "It would be relevant if there were other people present . . . , that there was a concern on the defendant's part that [ J.C.] . . . was about to perpetrate an act of violence against a member of his family. But none of those people were present. So for that reason, I'm going to exclude it."

Addressing these issues once more on a defense motion to reopen, defense counsel argued that J.C. "has the halo of lack of evidence of bad character of violence, where [defendant has] been saddled with rather remote conduct." The defense emphasized that the trial court prevented it from offering relevant evidence of J.C.'s recent threats and

attacks on defendant's family members, which were known to defendant and which "would weigh heavily in . . . [his] decision about whether he was threatened and the gravity of that threat."

The trial court denied defendant's request to reopen, stating: "The Court has engaged in a[n Evidence Code section] 352 analysis . . . . The Court did allow there to be evidence presented of prior threats allegedly that were made about [defendant] that he was made aware of by way of a family member of his. [¶] In the Court's view, there is the great potential for undue consumption of time and confusion of the issues in this case should the defense be allowed to reopen . . . . [¶] [T]here was nobody else present at the location where this incident took place besides [defendant] and [J.C.] and [J.C.'s] minor children. If those circumstances were different, the Court would likely make a different ruling. But for all of those reasons, I'm denying the request to reopen the defense case."

Defendant argues the trial court erred when it prevented him from presenting evidence of J.C.'s threats and violence directed at his family members because this evidence supported his reasonable beliefs as to the threat posed by J.C. and thus supported his self-defense claim. We conclude the trial court did not abuse its discretion in excluding this evidence.

B.    *Applicable Principles of Law*

Only relevant evidence is admissible at trial. (Evid. Code, § 350.) " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

Notwithstanding its relevance, the "court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) " 'An appellate court reviews a court's rulings regarding relevancy and admissibility under

8

Evidence Code section 352 for abuse of discretion. [Citation.] We will not reverse a court's ruling on such matters unless it is shown " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Jones* (2017) 3 Cal.5th 583, 609.)

The constitutional right to present a defense "does not encompass the ability to present evidence unfettered by evidentiary rules. [Citation.] Indeed, application of the ordinary rules of evidence does not impermissibly infringe on a defendant's right to present a defense." (*People v. Thomas* (2021) 63 Cal.App.5th 612, 627.)

A person employs lawful self-defense when the person "reasonably believed he was in imminent danger of violence, reasonably believed the immediate use of force was necessary to defend himself, and used no more force than was reasonably necessary to defend against the threat." (*People v. Hernandez* (2011) 51 Cal.4th 733, 747.) The test for the reasonableness requirement is objective, however, "reasonableness is determined from the point of view of a reasonable person in the defendant's position. The jury must consider all the facts and circumstances it might ' "expect[] to operate on [defendant's] mind . . . ." ' " (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065.)

"Evidence that a victim had previously threatened or harmed others is relevant to a defendant's claim of self-defense only if the defendant knew of the victim's prior threatening conduct." (*People v. Bates* (2019) 35 Cal.App.5th 1, 9-10, italics omitted.) "As a defendant's ' "perceptions are at issue," ' prior known threats by the victim ' "may color [the defendant's] perceptions of that individual." ' " (*Id*. at p. 10, quoting *People v. Minifie*, *supra*, 13 Cal.4th at pp. 1065-1066.) "Thus, '[t]he law [of self-defense] recognizes that the objective component is not measured by an abstract standard of reasonableness but one based on the defendant's perception of imminent harm or death. Because his state of mind is a critical issue, he may explain his actions in light of his knowledge concerning the victim.' " (*Bates*, at p. 10.)

## C. *Evidence of Domestic Violence Allegations*

We first conclude that the trial court acted within its discretion in excluding evidence of prior instances of domestic violence between J.C. and defendant's sister. As represented by the prosecutor, J.C. and his former wife each accused the other of domestic violence, and there was no evidence of resulting arrests or charges. The details of these alleged incidents are not clear from the record. The probative value of this evidence—that defendant was aware that his sister accused J.C. of prior instances of domestic violence—was limited given the dissimilarity between these allegations and the offense involved here.

This limited probative value was substantially outweighed by the probability that the admission of this evidence would unduly consume trial time and create a substantial danger of confusing the issues or misleading the jury. (Evid. Code, § 352.) If the evidence were introduced, the prosecutor intended to call rebuttal witnesses. Defendant argues that what is relevant is that he *heard* of these instances and they impacted his state of mind, and the truth of any such statements was irrelevant. He maintains that a claim of self-defense may lie "even if the danger did not actually exist or the defendant relied on information that was not true." (*People v. Iraheta* (2017) 14 Cal.App.5th 1228, 1252.) However, we cannot conclude it would be irrelevant for the prosecution to attempt to prove that claims of domestic violence were unfounded. Among other things, this could be relevant to defendant's credibility if he testified that he had heard of such allegations, what he had heard, and whether he had cause to believe what he had heard. The prosecutor's attempts to prove the allegations unfounded also could be relevant to the credibility of any other witness testifying that such events occurred, that defendant was aware of them, and that he had reason to believe them. (See Evid. Code, § 210 [relevant evidence includes evidence relevant to a witness's credibility].)

We cannot say that, in precluding evidence related to the domestic violence allegations, the trial court " ' " 'exercised its discretion in an arbitrary, capricious, or

10

patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Jones*, *supra*, 3 Cal.5th at p. 609.)

D.      *Other Evidence of Alleged Threats and Violence Toward Defendant's Family*

As for the evidence of other acts involving threats and violence by J.C. directed at defendant's family, the parties disagree as to the trial court's rationale in excluding this evidence.  Defendant argues the court erroneously excluded this evidence largely on the ground that the objects of J.C.'s prior threats and violence were not present during the altercation with defendant.  Defendant asserts that this rationale missed the mark because his defense was not defense of others, but rather self-defense based on what he knew.  The People counter that the trial court properly excluded this evidence pursuant to Evidence Code section 352.

In his motion to reopen, defendant sought to present evidence of J.C.'s acts of violence and threats occurring in the two months prior to the offense here.  Specifically, defendant stated that the trial court "excluded any proposed testimony regarding [J.C.'s] attack on his minor nephew, which was followed by a campaign of threats against [defendant's entire family] that continued to the day prior to" July 17, 2020, including challenging defendant's father to a fight.

The details of the proffered evidence are not clear.  However, given the rough contours provided by the defense, this evidence would have had some relevance to defendant's claim of self-defense, specifically defendant's perception of imminent harm based on what he knew of J.C. and J.C.'s threats and violent acts toward his family members.  (See *People v. Bates*, *supra*, 35 Cal.App.5th at pp. 9-10 ["Evidence that a victim had previously threatened or harmed others is relevant to a defendant's claim of self-defense . . . if the defendant knew of the victim's prior threatening conduct"].)  This evidence could be probative of defendant's state of mind and perceptions relevant to his self-defense claim.

As the People correctly assert, however, the trial court explicitly stated that it had conducted "a[n] [Evidence Code section] 352 analysis of this evidentiary issue," and it concluded that there was "great potential for undue consumption of time and confusion of the issues . . . should the defense be allowed to reopen and present the evidence . . . ." We cannot conclude the trial court abused its discretion. To admit this evidence, the trial court would have had to allow testimony about these incidents, about whether defendant heard about them, and about whether he had reason to believe them, from an unknown number of witnesses, including, potentially, rebuttal witnesses for the prosecution. The probative value of this evidence would be substantially outweighed by the probability that its admission would unduly consume trial time, confuse the issues, or mislead the jury. (Evid. Code, § 352.)

Moreover, there already was probative evidence relevant to defendant's state of mind in evidence. Defendant's nephew testified that, before defendant's arrest, "out of nowhere," J.C. said that, if he ever got "into it" with defendant, J.C. would "just hit him with a bat." J.C. admitted making such a statement, and defendant's nephew told defendant about the remark. This testimony was highly probative of defendant's state of mind when, according to defendant, J.C. approached him holding a baseball bat and poked him in the chest with it. The evidence proffered by defendant would have been cumulative to this evidence, less probative on the relevant point, and would necessitate the undue consumption of time. (Evid. Code, § 352.)

In its ruling, the trial court also relied on the premise that the subjects of J.C.'s alleged prior threats and acts of violence were not present during the incident with defendant. We are not persuaded this ground for exclusion was correct. However, " ' "a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' " (*People v. Zapien* (1993) 4 Cal.4th 929, 976.) Again, we conclude

12

that, in excluding this evidence under Evidence Code section 352, the trial court did not

" ' " 'exercise[] its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Jones*, *supra*, 3 Cal.5th at p. 609.)

Under a separate subheading, defendant alternatively argues that the trial court abused its discretion in preventing him from presenting this evidence as evidence of J.C.'s character for violence under Evidence Code section 1103. However, a defendant's motion to introduce evidence about the victim's character or a trait of character under Evidence Code section 1103 is subject to exclusion under Evidence Code section 352, and we review the trial court's determination under both statutes for an abuse of discretion. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 827-828.) For the same reasons discussed *ante*, we conclude the trial court did not abuse its discretion in excluding this evidence under Evidence Code section 352.

## II

### *Evidence Related to Defendant's Prior Convictions*

A.      *Additional Background and Defendant's Contentions*

Following certain testimony by defendant, at a sidebar conference, the prosecutor requested permission to elicit testimony concerning defendant's prior convictions under Evidence Code section 1102. The trial court agreed that defendant "opened the door." The prosecutor then cross-examined defendant concerning his prior convictions, including facts underlying those convictions. The prosecutor cross-examined defendant about whether he was convicted in 2011 of felony assault with a deadly weapon for using a metal flashlight. Defendant disagreed, indicating that it "was a stick," not a flashlight. The prosecutor asked if defendant was confused because, in 2013, defendant was convicted of felony battery likely to cause great bodily injury for using a stick, and defendant admitted he used a two-by-four against a female roommate. Defendant agreed

13

that he was also convicted of criminal threats that year. Defendant confirmed that he had been convicted of assault, battery, and criminal threats.

Defendant argues the trial court erred in admitting this evidence purportedly under Evidence Code section 1102. The People agree, as do we.

B.    *Analysis*

With certain exceptions, including those in Evidence Code section 1102, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) However, "evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation is not made inadmissible by Section 1101 if such evidence is: [¶] (a) Offered by the defendant to prove his conduct in conformity with such character or trait of character. [¶] (b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)." (Evid. Code, § 1102.)

Thus, pursuant to Evidence Code section 1102, "opinion evidence about a criminal defendant's character may only be offered by the prosecution in rebuttal to similar evidence presented by the defense." (*People v. McFarland* (2000) 78 Cal.App.4th 489, 495.) When "a defendant offers evidence of his good character 'to prove his conduct in conformity with such character or trait of character,' the prosecution may offer evidence to rebut it." (*People v. Hall* (2018) 23 Cal.App.5th 576, 591.) " ' "When a defendant places his character at issue . . . , the prosecution is entitled to respond with character evidence of its own." ' " (*Ibid*.) "Evidence Code section 1102 'allows the prosecution to present relevant opinion evidence regarding a defendant's character, but *only* when the defendant has first offered evidence placing his character in issue.' " (*Id*. at p. 592.)

The cross-examination testimony at issue, which the prosecutor argued and the trial court agreed "opened the door" to this testimony, pertained to whether defendant

14

"snapped," whether he had the capacity to kill, that he and J.C. both had "trouble" in their past, and that defendant had "run[] with street gangs" and been violent with them when he was younger. It cannot reasonably be argued that this testimony that purportedly "opened the door" was evidence offered "by the defendant to prove his conduct in conformity with" any character or trait of character. (Evid. Code, § 1102, subd. (a).) His cross-examination testimony certainly was not offered to prove conduct in conformity with a good or nonviolent character. Defendant also did not testify so as to prove his conduct in conformity with a character for violence. Defendant offered no evidence "to prove his conduct in conformity with" his character or a trait of character. (Evid. Code, § 1102, subd. (a).) The trial court therefore should not have allowed the prosecutor to elicit testimony to "rebut evidence adduced by the defendant under subdivision (a)" of Evidence Code section 1102. (Evid. Code, § 1102, subd. (b).)

Additionally, "Evidence Code section 1102, subdivision (b) allows the prosecution to introduce character evidence in the form of opinion or reputation evidence only, not specific acts of misconduct such as prior convictions or the facts underlying them." (*People v. Hall*, *supra*, 23 Cal.App.5th at p. 592.) Thus, the trial court erred in admitting this evidence because: (1) it was not properly admitted to rebut evidence offered by defendant, and (2) it addressed the facts underlying defendant's prior convictions.

C.     *Prejudice*

Defendant argues that the admission of this evidence, combined with CALCRIM No. 350 as modified by the trial court, violated his right to due process and rendered his trial unfair. He asserts that the error in admitting this evidence was not harmless under *Chapman*'s harmless-beyond-a-reasonable-doubt standard applicable to federal constitutional error. (See *Chapman v. California* (1967) 386 U.S. 18, 24.) To determine whether the People have satisfied the burden of proving an error harmless beyond a reasonable doubt, "we examine the entire record and must reverse if there is a ' " 'reasonable possibility' " ' that the error contributed to the verdict." (*People v. Reese*

15

(2017) 2 Cal.5th 660, 671.) In any event, defendant maintains the error was prejudicial under either *Chapman* or the *Watson* standard for state law error. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) Under *Watson*, an error requires reversal only if "it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*People v. Partida* (2005) 37 Cal.4th 428, 439.) We conclude the error was harmless under either standard.

According to J.C., he and defendant discussed a recent exchange involving J.C. and defendant's mother. Addressing defendant's mother's version of the exchange, J.C. told defendant, "that's not what happened." They also talked about defendant's sister. Later, defendant approached J.C. holding a baseball bat and said, "You've had this coming for a while . . . ." Defendant struck J.C. with the baseball bat at least 15 times. Defendant hit J.C. on his left leg, on his right leg, and on the head. He then hit J.C. with the bat "a couple more times" before J.C. sought refuge under a sleeping bag. Defendant hit J.C. on the head with the bat at least three more times. He then hit J.C. on his back, legs, and arm. When J.C. pleaded, "Stop, you're going to kill me," defendant replied, "That's what I want to do . . . ." J.C. abandoned the sleeping bag and retreated to a corner, where defendant continued his attack, hitting J.C. repeatedly. Jack B. arrived and he and defendant went out to the garage, where defendant said to Jack B., "Let me finish him," and "I'll have to kill the kids, too." At his parents' home, defendant said that "he had beat [the victim] in the head with a baseball bat," and that "he was going to kill him." J.C. received three or four staples in his arm, three on his right shin, and 22 or 23 in the back of his head. His left leg also was broken.

Defendant gave a very different account in his testimony and claimed self-defense. In his account, J.C. was at his kitchen table, cleaning a gun, when he told defendant that he should shoot defendant and his sister. Later, when the two discussed what occurred the day before, J.C. poked defendant in the chest with a baseball bat, trying to hit him. Defendant felt threatened so he grabbed the bat, swung it, and hit J.C. in the left leg.

16

When J.C. bent over, defendant hit him on the head. J.C. "went down" and defendant hit him twice on the back. Defendant denied saying that he wanted to kill J.C. and his children, and he denied saying, "Let me finish him."

Witnesses for both the prosecution and defense testified that J.C. said something to the effect that, if he ever got into an altercation with defendant, he would use a baseball bat. Defendant's nephew told defendant about this conversation.

J.C.'s account was bolstered by Jack B.'s testimony about what Jack B. observed upon his arrival, what defendant said to him, and what defendant said to others. Additionally, defendant acknowledged that, when he was arrested, he did not tell law enforcement that he hit J.C. with a bat; he told law enforcement that "it wasn't me, it was somebody else." Deputy Arredondo testified that, during his interview, defendant never said he was threatened and never said a gun was involved.

J.C. testified that he did not have any firearms in his house because he was a felon, and he did not handle a firearm on July 17, 2020. When law enforcement searched J.C.'s house, they did not locate a firearm, although the testifying officer could not speak to the details of any other officer's search.

The jury necessarily concluded that the prosecution had disproved self-defense beyond a reasonable doubt. CALCRIM No. 3470, as given, provided, in part: "The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. [¶] If the People have not met this burden, you must find the defendant not guilty" on both counts. Thus, the jury necessarily rejected, in whole or in part, defendant's account.

The evidence at issue here consisted of the prosecutor's question whether defendant had been convicted in 2011 of felony assault with a deadly weapon for using a metal flashlight; defendant's response that it "was a stick," not a flashlight; the prosecutor's follow-up question, whether defendant might be confused because, in 2013, he was convicted of felony battery likely to cause great bodily injury for using a stick;

17

defendant's concession that he used a two-by-four against a female roommate; defendant's acknowledgment that he was also convicted of criminal threats; and defendant's confirmation that he had been convicted of assault, battery, and criminal threats.

Elsewhere, however, defendant acknowledged that he had been convicted of one felony in 2002, one in 2011, and two in 2013. Thus, the jury otherwise learned of defendant's criminal history, albeit without the details of those convictions. Moreover, the brief underlying facts of defendant's prior convictions admitted into evidence were less inflammatory than the charged offense. (See *People v. Cordova* (2015) 62 Cal.4th 104, 133-134 [because the uncharged offenses admitted under Evid. Code, § 1108 "were not inflammatory compared to the charged crime, there was little prejudice"].)

Defendant asserts that CALCRIM No. 350 as given compounded the error and amounts to an "instructional component of this overall claim of error."[4] The trial court instructed the jury: "You have heard character testimony of the defendant's character for violence. [¶] You may take that testimony into consideration along with all the other evidence in deciding whether the People have proved the defendant is guilty beyond a reasonable doubt." (CALCRIM No. 350, as given.) Defendant argues that this instruction directed the jurors to consider his character for violence, without qualification or limitation, while omitting the portion of the pattern instruction addressed to character evidence that can give rise to a reasonable doubt, such as evidence introduced by the defense of the defendant's character for nonviolence. However, the trial court also instructed the jury on self-defense and the prosecution's burden to disprove it beyond a reasonable doubt (CALCRIM No. 3470), the beyond-a-reasonable-doubt burden of proof generally (CALCRIM Nos. 103, 220), that the mere commission of a prior crime or

---

[4] We address this claim on its merits and thus we need not discuss the parties' forfeiture and related arguments, or defendant's alternative contention that his trial attorney was ineffective for failing to object to CALCRIM No. 350 as given.

18

misconduct does not necessarily destroy or impair a witness's credibility (CALCRIM No. 316), and the elements of assault with a deadly weapon (CALCRIM No. 875). We presume the jury followed these instructions "in the absence of any indication it was unwilling or unable to do so." (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 196.)

Based on the foregoing, we cannot conclude, under either standard governing harmless error, that the evidence that was improperly admitted, along with CALCRIM No. 350 as given, prejudiced defendant. We find that it is not reasonably possible that the error in admitting this testimony or the trial court's instruction contributed to the jury's verdict. (See generally *Chapman v. California*, *supra*, 386 U.S. at p. 24; *People v. Reese*, *supra*, 2 Cal.5th at p. 671.)

## III

### *Failure to Instruct on Unanimity*

Defendant argues the trial court erred by failing to instruct the jurors on unanimity. Defendant argues, under separate subheadings, that this failure was prejudicial in relation to both the assault with a deadly weapon count, and the great bodily injury enhancement allegation. We conclude the trial court did not err in omitting a unanimity instruction.

"In a criminal case, a jury verdict must be unanimous. . . . [T]he jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Where implicated, the "unanimity instruction must be given sua sponte, even in the absence of a defense request to give the instruction." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.)

The continuous course of conduct exception to the requirement for a unanimity instruction arises in two contexts. The first context, relevant here, " ' "is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense." ' " (*People v. Hernandez*, *supra*, 217 Cal.App.4th at p. 572.) This context

19

"holds that a unanimity instruction is not ' "required when the acts alleged are so closely connected as to form part of one continuing transaction or course of criminal conduct," ' or ' " 'when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.' [Citations.]" [Citation.]' [Citations.] The justification for the exception is that there is no need for an instruction when there is a single course of conduct because members of the jury cannot distinguish between the separate acts. Further, the instruction is unnecessary when the defendant proffers the same defense to multiple acts because a guilty verdict indicates that the jury rejected the defendant's defense in toto." (*Ibid*.) A "continuous course of conduct exists when the same actor performs the same type of conduct at the same place within a short period of time, such that a jury cannot reasonably distinguish different instances of conduct." (*Id*. at p. 573.)

" '[A]ssertions of instructional error are reviewed de novo.' [Citation.] Whether or not the trial court should have given a 'particular instruction in any particular case entails the resolution of a mixed question of law and fact,' which is 'predominantly legal.' [Citation.] As such, it should be examined without deference." (*People v. Hernandez*, *supra*, 217 Cal.App.4th at p. 568.)

Whether based on J.C.'s account or defendant's, we conclude that defendant's beating of J.C. with a baseball bat occurred as part of one continuing transaction or course of criminal conduct.

In his argument on unanimity, defendant relies on his account of the altercation. According to defendant, after J.C. poked him in the chest with the baseball bat, defendant seized the bat, swung it, and hit J.C. in the left leg. J.C. bent over and defendant hit him with the bat on the head. Then J.C. "went down," and, when he tried to get back up, defendant hit him twice on the back. Even accepting this recitation of the facts, the blows were contiguous in time and circumstance. The beating was a continuing transaction and course of conduct, and, as such, no unanimity instruction was required.

Defendant contends that some jurors may have concluded that the blow to J.C.'s head was excessive and, as such, was not committed in self-defense, while others could have concluded that this blow, while savage, was in furtherance of defendant's self-defense, but, when he subsequently struck J.C. on the back after he no longer posed a threat, this was no longer in self-defense. Thus, according to defendant, "these jurors could have jointly voted to find [him] guilty, without agreeing on what assaultive act constituted the crime." Such possibilities are at the center of defendant's contentions concerning both the assault count and the great bodily injury enhancement because the latter must have been committed "in the commission of" the assault. (CALCRIM No. 3160, as given.)

Again, however, we find that defendant's beating of J.C. occurred in a single transaction and involved a continuous course of conduct. There was no break in the action. The entire altercation appeared to be brief, measured more in seconds than minutes. There is no evidence to support the position that any of the blows were separated in time, in circumstance, or by intervening acts or events. All of the acts were part of a single, short-lived, continuous assault. Additionally, defendant offered a single defense; he struck J.C. in self-defense because defendant became fearful when J.C. poked him with the bat. The jury rejected this defense.

Defendant's strained effort to parse his assault of J.C., blow by blow, into separate discrete crimes or acts is unavailing. He has not directed us to any published case, nor are we aware of any, in which the individual blows of a continuous, unceasing, brief attack were so finely parsed as to separate them into distinct acts requiring a unanimity instruction.

By contrast, in *People v. Jefferson* (1954) 123 Cal.App.2d 219, on which the People rely, police officers arrived at the defendant's home and found her in the yard with a butcher knife. (*Id*. at p. 219.) She repeatedly swung the knife at officers. (*Id*. at pp. 219-220.) Later, the defendant went into her house, officers followed, and, when she

21

placed the butcher knife on a dresser, an officer grabbed it. (*Id*. at p. 220.) The defendant then removed a pocketknife from her purse and again began to slash at officers. (*Ibid*.) The appellate court rejected the contention that this constituted two different offenses requiring that the prosecution make an election. (*Id*. at pp. 220-221.) The court stated: "This whole episode consumed from 10 to 15 minutes, most of which time was taken up in talking outside the house in an effort by the officers to induce the appellant to give up the knife. Both of the matters . . . occurred in the course of a continuous effort on the part of the officers to disarm the appellant. They were a part of the same incident, and they could not reasonably be held to constitute two separate offenses, each complete in itself, and each of which would require a separate charge and a separate trial." (*Id*. at p. 221.) If the facts in *Jefferson* reflected a single transaction, then by even greater force of reason, defendant's attack on J.C. constituted a single transaction.

The parties also discuss *People v. Robbins* (1989) 209 Cal.App.3d 261. In that case, the defendant argued that "the [trial] court was required sua sponte to instruct the jurors they had to agree which injury or injuries supported each great bodily injury enhancement," and, otherwise, he was deprived of a unanimous verdict. (*Id*. at p. 264.) The defendant, among other things, grabbed the victim by the neck; struck her in the head; displayed a knife; struck her head and body with his fists; dragged her by the hair into her bedroom; forced her to orally copulate him; placed his finger in her vagina; continued to beat her intermittently; bit her nipple; gouged her eye; and ran his knife down her spine. (*Id*. at pp. 263-264.) The appellate court stated that the jury must decide only "whether the victim suffered that quantum of injury legally defined as great bodily injury," and that "the entire course of conduct and its overall result--not each act and individual injury--must be examined. Viewed in this light, it was unnecessary . . . to give CALJIC No. 17.01 [on unanimity] in relation to the great bodily injury enhancement." (*Id*. at p. 265.) The court further stated the defendant's "attack on his victim was one prolonged assault, of which the individual blows and other indignities were inseparable

components," and the trial court was not required to instruct on unanimity. (*Id*. at p. 266.) If a unanimity instruction was not required on the facts as in *Robbins*, such an instruction was not required here.

The trial court properly omitted the unanimity instruction. Defendant's acts were part of one transaction and one course of conduct and there was no reasonable basis for the jury to distinguish between any of defendant's acts.

IV

*Cumulative Error*

Defendant argues that the cumulative effect of the errors warrants reversal. We have found no prejudice resulting from the erroneous admission of evidence related to defendant's prior convictions. We have rejected defendant's other claims of error. Thus, there are not multiple errors and there is no cumulative effect of such errors to consider in the aggregate. We therefore reject defendant's cumulative error claim. (See *People v. Vieira* (2005) 35 Cal.4th 264, 305; see also *People v. Richie* (1994) 28 Cal.App.4th 1347, 1364, fn. 6.)

V

*2011 Prior Strike Conviction*

Defendant argues the trial court's true finding concerning the prior strike conviction allegation based on his conviction in 2011 for violating section 245, former subdivision (a)(1) is not supported by substantial evidence. The People concede the point and we agree.

The trial court's true finding was based on a certified record of conviction in Siskiyou County Superior Court case No. 2010-1806. The information charged defendant in count 1 with assault with a deadly weapon by means likely to produce great bodily injury. It further alleged defendant's personal use of a deadly and dangerous weapon caused the offense to be a serious felony within the meaning of section 1192.7, subdivision (c)(23). A minute order stated that, on count 1, defendant pleaded no contest

23

to violation of section 245, former subdivision (a)(1).  The minute order did not indicate that defendant admitted to the personal use of a deadly or dangerous weapon.  The plea form indicated defendant pleaded no contest to count 1, but specified that the issue "of whether case is a 'strike' will not be determined at this time."

The version of section 245 in effect in 2011 addressed "assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury . . . ."  (§ 245, former subd. (a)(1).)  " '[A]ssault with a deadly weapon' is a serious felony.  [Citation.]  On the other hand, while serious felonies include all those 'in which the defendant *personally inflicts* great bodily injury on any person' [citation], assault merely by *means likely to produce* GBI, without the additional element of personal infliction, is not included in the list of serious felonies.  Hence, . . . a conviction under the deadly weapon prong of [Penal Code] section 245[, former subdivision ](a)(1) is a serious felony, but a conviction under the GBI prong is not."  (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065, discussing § 245, former subd. (a)(1).)

"The People must prove each element of an alleged sentence enhancement beyond reasonable doubt."  (*People v. Delgado*, *supra*, 43 Cal.4th at p. 1065.)  "[I]f the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense.  [Citations.]  In such a case, if the statute under which the prior conviction occurred could be violated in a way that does not qualify for the alleged enhancement, the evidence is thus insufficient, and the People have failed in their burden."  (*Id*. at p. 1066.)  "On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence."  (*Id*. at p. 1067.)

Defendant's plea to violation of section 245, former subdivision (a)(1) alone did not establish that he pleaded to a strike offense.  The record of conviction does not

24

contain any additional admissions to establish that he did. Further, the probation report suggests the personal use of a dangerous or deadly weapon allegation (§ 1192.7, subd. (c)(23)) was dismissed. Substantial evidence does not support the true finding that the 2011 conviction constituted a strike conviction.

"Neither double jeopardy nor due process bars a retrial on the prior conviction allegation, and on remand, the People may present additional evidence to demonstrate that" the 2011 assault constituted a strike conviction. (*People v. Banuelos* (2005) 130 Cal.App.4th 601, 607.) "Such evidence must be limited to that contained in the record of conviction." (*Ibid.*) We will remand the matter to afford the prosecutor the opportunity to present additional evidence relevant to whether this constituted a prior strike conviction.

## DISPOSITION

The true finding on defendant's prior strike allegation based on his 2011 conviction under section 245, former subdivision (a)(1) is reversed, and the matter is remanded for a retrial on that prior strike allegation if the People so elect. The judgment is otherwise affirmed.

\s\
Krause, Acting P. J.

We concur:

\s\
Boulware Eurie, J.

\s\
Wiseman, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.